**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MONAHAN PRODUCTS LLC d/b/a UPPABABY, | |
|          Plaintiff, | No. 1:18-cv-11561-FDS |
|    v. | |
| SAM'S EAST, INC. and SAM'S WEST, INC., | REDACTED - PUBLIC VERSION |
|          Defendants. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ........................................................................................................ iii

I.     Legal Standards for a Motion for Summary Judgment on Lanham Act
Damages ..................................................................................................................2

II.    Monahan is entitled to an award of corrective advertising damages ................................4

       A.      Corrective Advertising Damages Are an Available Remedy to
Compensate Monahan for Damage to its Brand and Reputation ...........................4

       B.      Sam's Club Was Well Aware of Monahan's Damages Theories,
but Chose to Ignore Them .......................................................................................7

       C.      Sam's Club has Ignored Material Disputes of Fact that Preclude
Summary Judgment ..................................................................................................9

       D.      Sam's Club's Motion Fails to Present Any Argument Supporting
its Entitlement to Summary Judgment on Damages Stemming from
Monahan's False Advertising Claim .....................................................................13

III.   Monahan is Entitled to Recover the Extra Expenses it Incurred to Combat
Sam's Club's Harmful Actions .............................................................................14

IV.   Monahan Is Entitled To Seek A Disgorgement of Sam's Club's Profits
Realized Through Its Fraudulent Behavior ...........................................................16

V.    Sam's Club's conclusory Arguments Regarding Monahan's 93A claim
Fail as a Matter of Law and fact ...........................................................................18

VI.   Conclusion .............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aktiebolaget Electrolux v. Armatron Inter., Inc.*,
    999 F.2d 1 (1st Cir. 1993)..............................................................................16, 17

*Aladdin Mfg. Co. v. Mantle Lamp Co. of America*,
    116 F.2d 708 (7th Cir. 1941) ..................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................3

*Aronowitz v. Health-Chem Corp.*,
    513 F.3d 1229 (11th Cir. 2008) ...............................................................................6

*Attrezzi, LLC v. Maytag Corp.*,
    436 F.3d 32 (1st Cir. 2006)....................................................................................11

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*,
    561 F.2d 1365 (10th Cir. 1977) .........................................................................6, 11

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*,
    443 F.3d 112 (1st Cir. 2006)..................................................................................11

*Bose Corp. v. Ejaz*,
    732 F.3d 17 (1st Cir. 2013)......................................................................................3

*Cadle Co. v. Hayes*,
    116 F.3d 957 (1st Cir. 1997)........................................................................9, 10, 13

*Calero-Cerezo v. U.S. Dep't of Justice*,
    355 F.3d 6 (1st Cir. 2004)........................................................................................3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................3

*First Act, Inc. v. Brook Mays Music Co.*,
    429 F. Supp. 2d 429 (D. Mass. 2006) .................................................................6, 13

*Hahn v. Sargent*,
    523 F.2d 461 (1st Cir. 1975).....................................................................................3

*HipSaver Co., Inc. v. J.T. Posey Co.*,
    490 F. Supp. 2d 55 (D. Mass. 2007) ......................................................................14

*Justiniano v. Walker*,
No. 15-CV-11587-DLC, 2019 WL 7169785 (D. Mass. Dec. 24, 2019) ...............................15

*Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*,
438 Mass. 459, 781 N.E.2d 787 (2003) ......................................................................18

*Mack v. Great Atl. & Pac. Tea Co.*,
871 F.2d 179 (1st Cir. 1989) ....................................................................................10

*McKeown v. Woods Hole*,
9 F. Supp. 2d 32 (D. Mass. 1998) ...............................................................................7

*Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*,
2006 U.S. Dist. LEXIS 14360 (D. Mass. 2006) .............................................3, 6, 13

*Petrageous Designs, Ltd. v. Olivet International, Inc.*,
2017 WL 8185483 (D. Mass. 2017) ............................................................................7

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
657 F.2d 482 (1st Cir. 1981) .................................................................................3, 11

*PODS Enterprises, LLC v. U-Haul Intern., Inc.*,
126 F. Supp. 3d 1263 (M.D. Fl. 2015)................................................................4, 5, 6, 7

*Punch Clock, Inc. v. Smart Software Development*,
553 F. Supp. 2d 1353 (S.D. Fl. 2008) .........................................................................6

*Ramada Inns, Inc. v. Gadsden Motel Co.*,
804 F.2d 1562 (11th Cir. 1986) ...............................................................................10

*Rimowa Distribution, Inc. v. Travelers Club Luggage, Inc.*,
217 F. Supp. 3d 400 (D. Mass. 2016) .......................................................................11

*Simon Prop. Grp., L.P. v. mySimon, Inc.*,
2001 WL 66408 (S.D. Ind. 2001) ................................................................................4

*Skydive Arizona, Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) .................................................................................14

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
982 F.2d 633 (1st Cir. 1992).................................................................................3, 12

*Sonoran Scanners, Inc. v. Perkinelmer, Inc.*,
585 F.3d 535 (1st Cir. 2009).................................................................................18, 19

*Spruce Environmental Technologies, Inc. v. Festa Radon Technologies, Co.*,
248 F. Supp. 3d 316 (D. Mass. 2017) ........................................................................3

*Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*,
    282 F.3d 23 (1st Cir. 2002) ...................................................................................3, 17

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
    793 F.2d 1034 (9th Cir. 1986) ......................................................................................6

*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*,
    2006 WL 839486 (D. Mass. 2006) .............................................................................17

*Zazu Designs v. L'Oreal, S.A.*,
    979 F.2d 499 (7th Cir. 1992) .......................................................................................4

## Statutes

Fed. R. Civ. P. 56(b) ...........................................................................................................3

Mass. Gen. Law. 93A § 11 ................................................................................................18

## Other Authorities

Charles A. Wright & Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1255 (3d ed.
    2004) ............................................................................................................................8

*Daily News* (May 4, 2011), *available at* https://www.nydailynews.com/new-
    york/brooklyn/study-proves-walmart-super-stores-kill-local-small-businesses-
    article-1.140129 .........................................................................................................12

https://uppababy.com/retail-locator/ ..................................................................................19

Sam's Club's *Motion for Partial Summary Judgment* should be denied because it is legally and factually unsupported, and ignores evidence showing actual confusion and Sam's Club's impact on Monahan. Disputed material facts concerning the harm caused by Sam's Club's infringement and false advertising preclude summary judgement and must be resolved by a jury.

Monahan brought this action because Sam's Club sold gray market UPPAbaby strollers that it purchased abroad and imported into the United States without authorization from Monahan. Sam's Club infringed Monahan's registered trademarks by using them in its nationwide advertising of its gray market strollers, and falsely advertised that Monahan's warranty applied to its goods. *See generally Amended Complaint*; *see generally Monahan's SJ Mot.*[1] Sam's Club knew its statements were false, but did not care. *Olivero Depo. Tr.*, Dkt. 77-6, at 140:10-19, 151:3-9 ("█████████████████████.").

Sam's Club's motion does not seek summary judgment relating to its trademark infringement or false advertising. The facts clearly show that Sam's Club is liable for both infringing Monahan's registered trademarks, and falsely advertising its gray market UPPAbaby strollers. *See generally Monahan's SJ Mot.* There is no dispute that from 2017-2019, Sam's Club tasked its "diverted" goods team to acquire UPPAbaby® strollers intended for sale outside the United States, and to import them into the United States for sale on Sam's Club website without authorization and without being covered by Monahan's manufacturer's warranty. *Id.*, at 1-2, 6-8. Sam's Club knew its strollers were not covered by Monahan's warranty because its supplier told Sam's Club there was no warranty. *Supplier's Brand Rep. and Cert. Form*, Dkt.

---

[1] Citations to "Monahan's SJ Mot." refer to *Monahan's Motion for Summary Judgment* filed December 6, 2019, and the supporting exhibits filed therewith. Dkt. 76-78.

77-10. Sam's Club then disseminated tens of millions of advertisements nationwide to its members promoting the sale of its gray market UPPAbaby strollers at steep discounts, and directed its members to Sam's Club's website to make purchases. *See July 22 Letter*, Dkt. 47-6; *May 2018 Flyer*, Dkt. 50-1, at 18 (noting "Online Only"); *February 2018 Instant Savings Book*, Dkt. 50-2, at 25 (noting "Online Only"). Sam's Club falsely advertised UPPAbaby strollers on its website, including claims that Monahan's manufacturer's warranty applied to those strollers. *See Amended Complaint*, Ex. 3 (noting "6-month manufacturer warranty").

Sam's Club must compensate Monahan for its harmful actions. Sam's Club's infringement and false advertising have left Monahan to deal with confused and angry customers, frustrated retailers, and misinformation in the marketplace about Monahan's products and warranty. Sam's Club's *Motion* attempts to minimize the harm caused to Monahan by ignoring the evidence and law.

Sam's Club's motion should be denied because it is based upon an incorrect understanding of the availability of corrective advertising as a remedy for Sam's Club's Lanham Act violations, and ignores much of the record evidence demonstrating confusion and damage to Monahan's brand and reputation. Likewise, Sam's Club's motion ignores applicable case law and evidence regarding disgorgement of profits, and ignores evidence of the extra expenses Monahan incurred in combating Sam's Club's actions. Sam's Club also fails to properly consider evidence regarding Monahan's claim under Mass. Gen. Law. 93A.

Accordingly, Sam's Club's motion for partial summary judgment should be denied.

## I.    LEGAL STANDARDS FOR A MOTION FOR SUMMARY JUDGMENT ON LANHAM ACT DAMAGES

Summary judgment is proper *only* "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981); Fed. R. Civ. P. 56(b). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986)). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

"In addition to its own loss of profits, a plaintiff may, for example, suffer harm to the goodwill associated with its mark." *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 37 (1st Cir. 2002). "By its very nature, trademark infringement results in irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be satisfactorily quantified and, thus, the trademark owner cannot adequately be compensated." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992); *see also Bose Corp. v. Ejaz*, 732 F.3d 17, 25 (1st Cir. 2013). Further, "direct evidence is not required to establish harm to goodwill on summary judgment." *Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.*, 2006 U.S. Dist. LEXIS 14360, at *27 (D. Mass. 2006).

"In passing on a motion for summary judgment, the court must view the record and draw inferences most favorably to the opposing party." *Pignons*, 657 F.2d at 486 (citing *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975)). Where genuine disputes of material fact persist, summary judgment must be denied. *Spruce Environmental Technologies, Inc. v. Festa Radon Technologies, Co.*, 248 F. Supp. 3d 316, 321-322 (D. Mass. 2017).

## II. MONAHAN IS ENTITLED TO AN AWARD OF CORRECTIVE ADVERTISING DAMAGES

Monahan is entitled to an award of corrective advertising damages.  Compensation for corrective advertising expenses are an acceptable form of damages that Monahan may pursue for Sam's Club's trademark infringement and false advertising.  Material disputes of fact require that a jury decide the amount of damages to which Monahan is entitled.  Sam's Club's motion should be denied.

### A. Corrective Advertising Damages Are an Available Remedy to Compensate Monahan for Damage to its Brand and Reputation

The costs for corrective advertising are widely recognized as an appropriate measure of damages for trademark infringement and false advertising, and are a proper measure of Monahan's damages due to Sam's Club's gray market import scheme.  Sam's Club incorrectly argues against precedent by claiming that corrective advertising damages are not recoverable.  Sam's Club's arguments are not supported even by the cases cited in its *Motion*.

Under the Lanham Act, a trademark owner may recover for "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts" which includes "the costs of corrective advertising or injury to business reputation or goodwill."  *PODS Enterprises, LLC v. U-Haul Intern., Inc.*, 126 F. Supp. 3d 1263, 1282 (M.D. Fl. 2015) (citations omitted).  Corrective advertising damages are a "method of repair."  *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992).  "Defendant diminishes the value of plaintiff's trademark, and advertising restores that mark to its original value."  *Id*.  "An award of corrective advertising is intended to compensate a trademark owner for the amount it has spent, or will be required to spend in the future, to dispel harmful confusion caused by a defendant's infringement."  *Simon Prop. Grp., L.P. v. mySimon, Inc.*, 2001 WL 66408, at *23 (S.D. Ind. 2001).

Sam's Club's trademark infringement and false advertising caused harm to Monahan's brand and reputation, and is precisely the type of behavior that the Lanham Act is designed to protect against. *PODS*, 126 F. Supp. at 1282. It is undisputed that over the past three years, Sam's Club acquired gray market UPPAbaby strollers intended for sales overseas and resold them into the United States at significantly discounted prices and without Monahan's warranty protection. *See generally Monahan's SJ Mot.* Sam's Club engaged in a nationwide advertising campaign using Monahan's trademarks to promote the sale of its gray market strollers. *See e.g., July 22 Letter*, at 2. Sam's Club's advertisements directed customers to its website to make a purchase, where Sam's Club falsely advertised that a "6-month manufacturer's warranty" was applicable to the strollers. *See Amended Complaint*, Ex. 3. But, Monahan's manufacturer's warranty, which covers strollers for 2 or 3 years, never applied to Sam's Club's strollers because the strollers were not sold by an authorized retailer and were sold outside of their intended country. *See Amended Complaint*, Ex. 2. Sam's Club was fully aware its strollers were not covered by Monahan's warranty because it was not an authorized retailer and its supplier told Sam's Club that no warranty applied. *See Supplier's Brand Rep. and Cert. Form*; Harris Decl. Ex. E ("Olivero Depo. Tr."), at 138:6-140:13 ("███████████████████████████████ █████████.").

Monahan is properly seeking an award of corrective advertising damages in order to counteract the damage inflicted by Sam's Club's infringement and false advertising. Monahan is a well-known brand that sells high-quality products and invests in maintaining a particular image, quality, and reputation. *See Monahan's SJ Mot.*, at 2-5. Monahan provides a highly regarded warranty on its strollers to ensure that customers receive the service they expect with high-end products. *Id.* Sam's Club's sale of materially different UPPAbaby strollers harms that

brand value and reputation that Monahan invested significant resources into building. *See e.g.,* Harris Decl. Ex. C ("Apotheloz Depo. Tr."), at 33:11-23 (when customers "███████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████████ ").

Sam's Club errs as a matter of law by arguing that corrective advertising damages are not available under the Lanham Act. Courts across the country agree that an injured party may recover damages for costs incurred for corrective advertising, for future advertising, or both, in order to compensate a business for costs of reversing damage to its reputation or goodwill. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008); *see also U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) (reputation damages award properly based on corrective advertising expenditures made before trial); *PODS*, 126 F. Supp. 3d at 1282 (awarding $45 million for corrective advertising damages); *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977) (awarding $678,302 for corrective advertising); *Punch Clock, Inc. v. Smart Software Development*, 553 F. Supp. 2d 1353, 1358-1359 (S.D. Fl. 2008) (awarding corrective advertising damages for 7-year Google AdWords campaign).

Even the cases cited by Sam's Club support Monahan's right to have its corrective advertising damages determined by a jury. Corrective advertising damages are an available remedy for <u>both</u> trademark infringement and false advertising damages. *See Nat'l Fire*, 2006 U.S. at *27-30 ("award equaling the amount necessary for corrective advertising is recoverable as a remedy where there was actual harm"); *First Act, Inc. v. Brook Mays Music Co.*, 429 F. Supp. 2d 429, 437-440 (D. Mass. 2006) ("a damage award for prospective remedial advertising

may stand. . .").  Sam's Club also conveniently ignores the fact that its own expert has opined on corrective advertising damages in trademark cases.  *See e.g.,* Harris Decl. Ex. F ("Winer Depo. Tr."), at 76:9-12.

Juries routinely decide questions of future economic damages based on data, opinions of qualified experts, or other competent evidence.  *See e.g., McKeown v. Woods Hole*, 9 F. Supp. 2d 32, 48 (D. Mass. 1998) (permitting jury to decide future pain and suffering damages to a "reasonable certainty" based on "tables, expert testimony or otherwise").  Monahan has presented ample evidence of harm to its reputation, and its corrective advertising damages are supported by evidence from both parties, the opinions of experts, and Monahan's damages estimates were accepted by Sam's Club's experts, much of which Sam's Club's *Motion* has ignored.  *Infra* Part II.C; *Winer Depo. Tr.*, at 117:3-7 ████████████████████████████
████████████████████████████████████

The law clearly supports awards of corrective advertising damages for trademark infringement and false advertising.  Sam's Club's arguments to the contrary are legally incorrect, and not supported by the case law.  Thus, Sam's Club's *Motion* should be denied.

**B.      Sam's Club Was Well Aware of Monahan's Damages Theories, but Chose to Ignore Them**

Sam's Club has been on notice throughout this case that Monahan was pursuing damages for harm to its brand, reputation, and goodwill.  *See e.g., Amended Complaint*, at ¶¶ 22, 23, 30, 33, 34, 40.  Monahan explained that "UPPAbaby seeks damages . . . ***for the harm to UPPAbaby's reputation and good will, and for UPPAbaby's time and resources spent taking corrective action and educating the public and its resellers concerning the infringement***. ***UPPAbaby seeks damages reflecting the harm to its reputation attributable to Sam's Club's false advertising claims***. . ."  Harris Decl. Ex. I, at ¶ 10 (emphasis added).  There is no material

dispute that Monahan was seeking damages for corrective actions to rebut Sam's Club's false advertising, which includes corrective advertising damages. *See Petrageous Designs, Ltd. v. Olivet International, Inc.*, 2017 WL 8185483, at *3 (D. Mass. 2017) (citing Charles A. Wright & Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1255 (3d ed. 2004)).

Moreover, Monahan explained the need for discovery relating to advertising and its significance. *See e.g., July 24 Letter*, Dkt. 47-7, at 2 ("…extensive corrective advertising is necessary to address the reputational harm suffered by Monahan as a result of Defendants' actions."). Sam's Club recognized Monahan's concerns and produced evidence of its advertising efforts in response to Monahan's discovery requests, including copies of the fliers it disseminated nationwide. *See Mot. to Compel*, Dkt. 46, at 4-6. Sam's Club has been represented by two different law firms and a team of in-house attorneys over the pendency of this case, and had numerous opportunities to seek further explanation of Monahan's damages but chose not to do so.

There is no dispute that Monahan timely disclosed two experts who rendered opinions on corrective advertising damages. *Holt Expert Report*, Dkt. 64-6, at Part VIII; *Fishman Expert Report*, Dkt. 64-2. Sam's Club served responsive expert reports that discussed corrective advertising damages. *Winer Expert Report*, Dkt. 64-3. And there is no dispute that Sam's Club deposed both of Monahan's damages experts, where it inquired about Monahan's damages theories. *Def.'s SJ Mot.*[2], at 4; *see also* Harris Decl. Ex. B ("Holt Depo. Tr."), at 71:6-73:10 (discussing harm claimed by Monahan).

---

[2] Citations to "Def.'s SJ Mot." refer to *Defendants' Motion for Partial Summary Judgment* filed December 6, 2019, and the supporting exhibits filed therewith. Dkt. 68-70, 75.

Monahan more than adequately put Sam's Club on notice of its damages claims. And Sam's Club had ample opportunity to explore Monahan's corrective advertising damages.

### C. Sam's Club has Ignored Material Disputes of Fact that Preclude Summary Judgment

Sam's Club's has failed to meet its burden of showing that there are no material disputes of fact. Significant disputes of fact remain, and Sam's Club's statement of facts relies on inapposite and disputed facts. Monahan's damages are a triable issue for a jury to decide.

Sam's Club's motion fails to indicate how its alleged "material facts" support even its flawed legal arguments. "[T]he movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of a trial." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). Sam's Club's arguments regarding corrective advertising contain only a ***single*** citation to the factual record, and its Rule 56.1 Statement does not cite any factual bases for its conclusory arguments. Sam's Club does not put forth any facts about harm to Monahan's brand or reputation, nor discuss instances of customer confusion. And many of Sam's Club's alleged "undisputed facts" are disputed: for example, Monahan's expert Mr. Fishman did have communications with Small Army in performing his analysis, and Small Army provided an independent quote for corrective advertising expenses. *Holt Depo. Tr.*, at 73:20-75:19 ("████████████████████"); Harris Decl. Ex. A ("Fishman Depo. Tr."), at 139:21-140:7 ("████████████████████").

Sam's Club's Statement of Facts focuses on its *Daubert* motions, not its motion for summary judgment. For example, "undisputed" fact 12 is directed solely to Mr. Fishman's qualification as an expert, and facts 13-20 all incorrectly allege that Mr. Fishman did not apply Sam's Club's chosen "number of eyeballs" methodology despite Mr. Fishman's application of his own methodology. *See Memo. in Opp. to Def.'s Mot. to Exclude Fishman*, Dkt. 92, at 14-17.

Mr. Fishman's methodology included reproducing the same effect of Sam's Club's advertising by mirroring the same advertising techniques used by and to the same demographic as Sam's Club. *Id.* And as with its *Daubert* Motion, Sam's Club improperly faults Mr. Fishman for not reviewing evidence that Sam's Club refused to produce. *Id.; see also Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (affirming award of reputational damages and noting "[t]he wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury.").

Sam's Club's motion has ignored important evidence in the record supporting Monahan's claims. Where the evidence has "substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial," summary judgment must be denied. *Cadle Co.*, 116 F.3d at 960 (quoting *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

Sam's Club's claim that it "did nothing wrongful" in selling its gray market strollers ignores ample evidence that it lied to the public about the warranty applicable to its goods, and continued its behavior despite several warnings that it was wrong. When Sam's Club was unable to purchase products directly from Monahan, it used its "diverted" goods team to purchase gray market goods. Harris Decl. Ex. G ("Nipps Depo. Tr."), at 35:15-36:11. Sam's Club knew its unauthorized UPPAbaby products were not covered by any manufacturer's warranty because it was not an authorized Monahan retailer and its supplier had informed Sam's Club several times that no such warranty was applicable. *Apotheloz Depo. Tr.*, at 80:6-10; *Supplier's Brand Rep. and Cert. Form*. Sam's Club continued its infringement and false advertising because it "███ ████████████." *Olivero Depo. Tr.*, at 140:10-19, 151:3-9.

Sam's Club's conclusory statement that there is no "evidence of identifiable, quantifiable harm" ignores evidence of actual confusion among its own customers and potential customers, as well as bedrock trademark law principles. "[A] trademark holder's burden is to show likelihood of confusion, not actual confusion . . . proof of actual confusion is not essential to finding likelihood of confusion." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120-121 (1st Cir. 2006); *see also Rimowa Distribution, Inc. v. Travelers Club Luggage, Inc.*, 217 F. Supp. 3d 400, 408-409 (D. Mass. 2016) (absence of actual confusion, or a small amount of it, "is probative only where the competing products have durably coexisted in the same marketplace."). Actual confusion is but one of the *eight* factors analyzed in a trademark infringement case in this Circuit. *See Pignons*, 657 F.2d 482, 487. However, where it exists, "evidence of actual confusion [is] often deemed the best evidence of possible future confusion." *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006).

Sam's Club has ignored evidence of confusion in which its own customers attempted to register their strollers for Monahan's warranty protection, completely unaware that Monahan's warranty did not apply. Harris Decl. Exs. L-Q, S, U-V, X-Y. Several customers, and potential customers at the point of purchase, called Monahan regarding warranty registration, only to learn that their products were not covered by the Monahan warranty. *Id.* And Sam's Club's lack of knowledge about UPPAbaby strollers caused even its own employees to call Monahan for clarity. *Sam's Club Call*, Dkt. 77-15; Harris Decl. Ex. T. Yet Sam's Club continued to falsely represent to its customers that it was an authorized retailer of UPPAbaby strollers. *See Walmart Chat Excerpt*, Dkt. 77-13.

Likewise, Sam's Club's claim that there is "nothing wrongful about selling the strollers at discounted prices" again ignores evidence and the law regarding damage to Monahan's brand,

reputation, and product quality.  Corrective advertising expenses are designed to "counteract the public confusion resulting from [the] defendant's wrongful conduct."  *Big O*, 561 F.2d at 1374–75; *Societe*, 982 F.2d at 640 (irreparable harm to goodwill "flows from unlawful trademark infringement as a matter of law.").

Sam's Club cannot ignore testimony and evidence regarding brand damage.  Monahan's expert and fact witnesses each discussed how the sale of strollers by Sam's Club undercuts brand value and reputation by causing customers to question Monahan's product quality, pricing, and even its success as a company.  *See e.g.,* Harris Decl. Ex. D ("Monahan Depo. Tr."), at 43:10-45:17 ("████████████████████████████████████████████████ ████████████████████████████████████████████████████); *Holt Depo. Tr.*, at 49:17-50:4 ████████████████████████████████████████ ████████████████████████████████████████); *Fishman Depo. Tr.*, at 158:9-159:16 ████████████████████████████████████████████████ ████████████████████████████████ *Apotheloz Depo. Tr.*, at 33:11-23 (customers "████████████████████████████).  Sam's Club's actions also prompted customers to negatively discuss Monahan on social media.  *Apotheloz Depo. Tr.*, at 34:4-14.  And customers ***actually questioned*** the quality of its UPPAbaby strollers.  Harris Decl. Ex. R ("the price is so low that I was concerned that it was like a previous year's model"); Ex. W ("are their products of lesser quality? Are they using brand name on fake products?")

Both Sam's Club's conduct over the past three years and its present legal arguments show little regard for the law, which protects investments made by small companies like Monahan into building a high-end brand and reputation.  Indeed, Sam's Club and Walmart are among the world's largest retailers, and do not care about small businesses.  *See e.g., Steven Barrison*,

"Study Proves It: Walmart Super-Stores Kill off Local Small Businesses," *Daily News* (May 4, 2011), *available at* https://www.nydailynews.com/new-york/brooklyn/study-proves-walmart-super-stores-kill-local-small-businesses-article-1.140129. Sam's Club's failure to act within the law should not be rewarded. Sam's Club's motion should be denied.

### D. Sam's Club's Motion Fails to Present Any Argument Supporting its Entitlement to Summary Judgment on Damages Stemming from Monahan's False Advertising Claim

Sam's Club has failed to meet its burden of showing that Monahan may not recover for Sam's Club's false advertising about Monahan's warranty, which also entitles Monahan to recover corrective advertising damages. *See Nat'l Fire,* 2006 U.S. at *27-30; *First Act*, 429 F. Supp. at 437-440. "[T]he movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of a trial." *Cadle Co.,* 116 F.3d at 960.

Sam's Club's argument regarding corrective advertising damages does not address Monahan's false advertising claim. Sam's Club has only attempted to generally address the "harm to [Monahan's] reputation, to its business, or to its UPPAbaby brand" from the sale of its gray market strollers. Sam's Club has made no legal or factual arguments, nor put forth any supporting evidence or alleged undisputed facts, regarding the literally false statements it made about Monahan's warranty applicability and duration. Indeed, Sam's Club's incorrect belief that the basis for Monahan's false advertising claim is the sale of UPPAbaby strollers at steep discounts demonstrates that Sam's Club has not even attempted to understand the basis for Monahan's false advertising claim, let alone properly address it in its *Motion*.

There is no dispute that Sam's Club falsely advertised its strollers, claiming that a "6-month manufacturer's warranty" applied. *See generally Monahan's SJ Mot.* Sam's Club sent tens of millions of advertisements to its members and directed them to its website, where the

literally false information was displayed.  *Id.*  Sam's Club has failed to address this evidence and the impact of those false statements on Monahan separately from its arguments regarding its trademark infringement.  Accordingly, summary judgment should be denied.

## III.    MONAHAN IS ENTITLED TO RECOVER THE EXTRA EXPENSES IT INCURRED TO COMBAT SAM'S CLUB'S HARMFUL ACTIONS

Monahan is properly seeking to recover the extra expenses it incurred to mitigate the damage to its brand and reputation caused by Sam's Club's false advertising and trademark infringement.  The actual damages recoverable by a Lanham Act plaintiff are measured by the tort standard, under which the infringer-tortfeasor is liable for all injuries caused to plaintiff by the wrongful act, whether or not actually anticipated or contemplated by the defendant.  *Aladdin Mfg. Co. v. Mantle Lamp Co. of America*, 116 F.2d 708, 716 (7th Cir. 1941).  District courts have "a wide scope of discretion" in awarding actual damages, and can consider a variety of forms of actual damage that include "a plaintiff's expenditures in building its reputation." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012).

Monahan's employees, including its executive team, spent dozens of hours working to counteract Sam's Club's false advertising and the effects of its illegal gray market sales, including responding to questions from authorized retailers, and working with sales representatives to field complaints and inquiries from customers.  *Holt Depo. Tr.*, at 75:21-77:3. James Adamson, Vice President of International Sales, conducted an investigation to track down and verify the source of Sam's Club's gray market goods, and cut off its supply.  *See Apotheloz Depo. Tr.*, at 42:5-15.  Monahan also prepared and disseminated public statements regarding Sam's Club's unauthorized sale of UPPAbaby strollers.  Harris Decl. Ex. J.  The hours that Monahan employees had to divert from other useful endeavors to partially address the harm caused by Sam's Club is recoverable as a form of damages.

Sam's Club failed to provide legal support for any argument against Monahan's entitlement to recover the value of the time spent by its employees on mitigating actions. *HipSaver Co., Inc. v. J.T. Posey Co.*, 490 F. Supp. 2d 55, 61 (D. Mass. 2007) (noting that the moving party must first "show that there is an absence of evidence to support the non-moving party's position."). Where employee time is being spent to mitigate the harm caused by Sam's Club, it should not matter whether that time was spent by an hourly employee, an added employee, or by diverting the time of existing salaried employees. *See Holt Depo. Tr.*, at 77:4-79:5 ("███████████████████████████████████████████████████████ ███████████████████████████████████."). Monahan was forced to spend resources to address Sam's Club's infringement and false advertising. *See id.*

Sam's Club's procedural objections to the timing of Monahan's supplemental document production regarding its extra expenses are untimely, and should be rejected. The "UPPAbaby Loss Assessment" was created in August 2019, and promptly produced to Sam's Club alongside Monahan's expert reports, which Sam's Club admits. *Def.'s Statement of Facts*, ¶¶ 22, 23. Sam's Club's expert analyzed the document, *see Teshome Report*, at 11-15, and Sam's Club questioned Monahan's expert witness extensively about it. *Holt Depo. Tr.*, at 78:5-85:9.

Parties have a responsibility to diligently pursue their discovery complaints, and the Court generally will not consider objections to discovery raised for the first time on summary judgment. *Justiniano v. Walker*, No. 15-CV-11587-DLC, 2019 WL 7169785, at *5 (D. Mass. Dec. 24, 2019). If Sam's Club had a reasonable concern regarding Monahan's supplemental production of documents in support of its expert reports on damages, it could have sought additional discovery, or otherwise sought relief from the Court. Having failed to take any such

"concrete steps" to pursue its objection in a timely manner, it cannot form a basis for granting summary judgment. *Id.*

Sam's Club's motion also incorrectly suggests that Monahan's extra expenses are only supported by a single document, when in fact the "UPPAbaby Loss Assessment" is only one piece of the factual record demonstrating the expenses incurred by Monahan. *See Holt Expert Report*, at 32 (discussing mitigating steps taken). The "UPPAbaby Loss Assessment" contains an accounting of the hours spent by Monahan's executives to counteract Sam's Club's actions. *Id.* at App'x C, Ex. 8. However, Monahan's witnesses also discussed the steps taken by Monahan's employees at their depositions. *See e.g., Apotheloz Depo. Tr.*, at 42:5-15. Monahan produced and relied on additional documents detailing hours spent by Monahan's sales operations team employees addressing Sam's Club's actions, which were also considered by Sam's Club's damages rebuttal expert. *Teshome Expert Report*, at 13. Sam's Club's *Motion* ignores much of the evidence produced in this case concerning Monahan's extra expenses. Sam's Club's *Motion* should therefore be denied.

## IV. MONAHAN IS ENTITLED TO SEEK A DISGORGEMENT OF SAM'S CLUB'S PROFITS REALIZED THROUGH ITS FRAUDULENT BEHAVIOR

Sam's Club's fraudulent and willful conduct caused Monahan and its authorized retailers to lose sales they would have otherwise made. Sam's Club's arguments that it does not compete with Monahan and that it "did nothing wrong" are legally and factually incorrect.

Under the Lanham Act, a plaintiff seeking damages must prove actual harm, such as diversion of sales to the defendant, or that the products-in-question directly compete in the marketplace such that a defendant's profits would have gone to the plaintiff. *Aktiebolaget Electrolux v. Armatron Inter., Inc.*, 999 F.2d 1, 5 (1st Cir. 1993). However, where a defendant acted fraudulently, "the general rule of direct competition is loosened" and damages may be

assessed on an unjust enrichment or deterrence theory. *Id.*; *see also Tamko*, 282 F.3d at 37-38 (evidence of willful infringement supports a disgorgement of profits). A plaintiff may recover a defendant's profits "subject to principles of equity and the discretion of the court." *Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, 2006 WL 839486, at *11-12 (D. Mass. 2006). Courts evaluate several factors when considering a disgorgement of profits, including (a) the degree of certainty that the actor benefitted from the unlawful conduct, (b) interests of the public in depriving the actor of unjust gains and discouraging unlawful conduct, and (c) the role of the actor in bringing about the infringement or deceptive marketing. Rest. 3d Uncom. § 37(2).

Sam's Club's literally false statements about Monahan's warranty, and continued willful use of Monahan's trademarks over the past three years, constitute fraudulent conduct that justifies a disgorgement of its profits. *See generally Monahan's SJ Mot.* Sam's Club utilized literally false statements—which it knew were false—about Monahan's warranty and used Monahan's trademarks to drive sales of its gray market strollers. *Id.* Sam's Club "didn't care" that Monahan's warranty didn't apply to its goods, and took no steps to ensure that it displayed proper information on its website, even though its own supplier informed Sam's Club that no warranty applied. *Id.*

Sam's Club errs by arguing that the parties do not compete where it sold gray market versions of UPPAbaby strollers sold by Monahan and its retailers. The parties are competitors "[w]here the goods or services are directly competitive." *See* 4 McCarthy on Trademarks and Unfair Competition § 24:22 (5th ed.). There is no reasonable dispute that Sam's Club directly diverted the sales of 1,336 UPPAbaby strollers away from Monahan and its authorized retailers, who were ready, willing, and able to sell non-infringing UPPAbaby strollers in the U.S. Sam's Club competes directly with many of Monahan's largest authorized retailers, including Amazon.

Harris Decl. Ex. H ("Beeler Depo. Tr."), at 134:23-135:14. Indeed, Sam's Club based the price of its gray market strollers on a 30% or more discount of the price Amazon sells its authorized strollers for. *See* Harris Decl. Ex. K; *Beeler Depo. Tr.*, at 143:5-23.

Monahan competes with Sam's Club by way of its sales to Amazon and other authorized retailers. *Beeler Depo. Tr.*, at 134:23-135:14. Because Sam's Club's goods were originally intended for sales overseas, Monahan would have made an additional ███ sales in the U.S. but for Sam's Club's activities. *See Apotheloz Depo. Tr.*, at 112:12-14 ("█████████████████ ██████████████████████████). Such direct diversion of sales caused by the confusion of buyers is the heart of a "competitive" injury. 4 McCarthy on Trademarks and Unfair Competition § 24:22 (5th ed.). Accordingly, Sam's Club's motion should be denied.

## V.     SAM'S CLUB'S CONCLUSORY ARGUMENTS REGARDING MONAHAN'S 93A CLAIM FAIL AS A MATTER OF LAW AND FACT

Sam's Club violated Mass. Gen. Law. Ch. 93A by acquiring gray market UPPAbaby strollers intended for sales overseas, and by using literally false statements to advertise those products. Sam's Club's single-sentence argument is devoid of factual support, and should be rejected.

Claims under Mass. Gen. Law. 93A § 11 must be evaluated using a "center of gravity" approach, in which courts must examine whether the circumstances that give rise to a case occurred primarily and substantially within Massachusetts. *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 473, 781 N.E.2d 787 (2003). Under this test, courts must consider the facts "in the context of the entire § 11 claim." *Sonoran Scanners, Inc. v. Perkinelmer, Inc.*, 585 F.3d 535, 546 (1st Cir. 2009) (citing *Kuwaiti*, 781 N.E.2d at 799). This is a flexible analysis and "[n]o one factor predominates the analysis in every case." *California Association of Realtors, Inc. v. PDFfiller*, Inc., 2018 WL 1403330, at 20 (D. Mass. 2018).

Ultimately, ***the underlying burden of proof is on "the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth, i.e., defendants.***" *Id.* (quoting Mass. Gen. Laws ch. 93A § 11) (emphasis added).

Sufficient evidence exists that the center of gravity for Monahan's 93A claim is in Massachusetts. Monahan's principle place of business is in Rockland, Massachusetts, and its witnesses are also domiciled in Massachusetts. *Amended Complaint*, at 1. UPPAbaby strollers intended for sale in the United States are imported into Massachusetts and are stored in Monahan's warehouses in Rockland, Massachusetts. *Apotheloz Depo. Tr.*, at 26:21-25. Numerous Monahan customers are located in Massachusetts, and UPPAbaby strollers can readily be found being pushed by new parents through the streets of Boston. Several of Monahan's authorized retailers are also located in Massachusetts. *See* https://uppababy.com/retail-locator/. Sam's Club's website was and is accessible to individuals located in Massachusetts. *See e.g., Amended Complaint,* Ex. 3. And by its own admission, Sam's Club's advertisements impacted customers "throughout the United States," including in Massachusetts.

Sam's Club has failed to meet its burden of showing that the center of gravity of the instant case is not in Massachusetts. Sam's Club's analysis is limited to one conclusory statement that "it is beyond dispute that Sam's Club's activities impacted customers throughout the United States," and a ***single*** cite to one alleged material fact that "Sam's Club's advertisement and sale of UPPAbaby strollers took place throughout the United States." *Def.'s SJ Mot.*, at 17. Sam's Club did not discuss the location of the parties or their witnesses, the location of its stores, where it disseminated advertisements, or even where its website servers are located. Likewise, Sam's Club did not discuss where its sales took place or where its customers

or located, as it failed to produce such evidence in the litigation.  Given Sam's Club's deficient analysis, summary judgment should be denied.

## VI.   <u>CONCLUSION</u>

Sam's Club's partial motion for summary judgment on damages should be denied.

Dated: January 6, 2020              Respectfully submitted,

By:   /s/ *Nathan T. Harris*
       Craig R. Smith (BBO No. 636,723)
       Nathan T. Harris (BBO No. 675,533)
       Peter J. Evangelatos (*Pro Hac Vice*)
       **LANDO & ANASTASI, LLP**
       Riverfront Office Park
       One Main Street – 11th Floor
       Cambridge, MA 02142
       Tel:   (617) 395-7000
       Fax:   (617)-395-7070
       Email:   csmith@lalaw.com
              nharris@lalaw.com
              pevangelatos@lalaw.com

*Attorneys for Plaintiff Monahan Products LLC d/b/a UPPAbaby*

## CERTIFICATE OF SERVICE

I certify that on January 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.  Any other counsel of record will receive the foregoing via e-mail in PDF format.

/s/ *Peter J. Evangelatos*
Peter J. Evangelatos