# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------- x

MONAHAN PRODUCTS LLC          :    Case No. 18-cv-11561 (FDS)
d/b/a UPPABABY,                 :
             Plaintiff,    :    **REDACTED VERSION**
                      :
    v.                      :
                      :
SAM'S EAST, INC. and         :
SAM'S WEST, INC.,           :
            Defendants.    :
                      :

-------------------------------------------------------------- x

 

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF TRADEMARK INFRINGEMENT

<br>

Anthony F. Lo Cicero (*pro hac vice*)
Marc J. Jason (*pro hac vice*)
**AMSTER, ROTHSTEIN & EBENSTEIN LLP**
90 Park Avenue
New York, New York 10016
(212) 336-8000

Adam L. Littman
**ARENT FOX LLP**
The Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
(617) 973-6195

*Attorneys for Defendants*
*Sam's East, Inc. and Sam's West, Inc.*

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 3

        A.      UPPAbaby Strollers Sold by Sam's Club ............................................. 4

        B.      Monahan's Manufacturer's Warranty .................................................... 4

        C.      Sam's Club's 100% Merchandise Satisfaction Guarantee ..................... 6

III.    LEGAL STANDARD .......................................................................................... 6

        A.      Legal Standard for Summary Judgment ................................................ 6

        B.      Legal Standard for "Material Difference" in Goods .............................. 7

IV.     ARGUMENT ....................................................................................................... 7

        A.      No Evidence of Material Difference Between UPPAbaby Strollers
                Sold at Sam's Club and Those Sold at "Authorized" Retailers ............. 8

                a.      Monahan's Manufacturer's Warranty Has No Impact ............... 8

                b.      Sam's Club Purchasers Were Covered by Monahan's
                        Warranty ................................................................................ 10

                c.      Additional Alleged Differences Do Not Make the Strollers Sold
                        by Sam's Club Materially Different ........................................ 11

                d.      Warranty Alone Has Not Been Held to Make Goods Materially
                        Different ................................................................................ 12

        B.      UPPAbaby Strollers Sold by Sam's Club Were Not
                "Gray Market" Goods ....................................................................... 15

V.      CONCLUSION ................................................................................................ 17

i

# TABLE OF AUTHORITIES

Page(s)

CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...........................................................................................6, 7

Bose Corp. v. Ejaz,
No. 11-10629-DJC, 2012 U.S. Dist. LEXIS 130953
(D. Mass. Sept. 13, 2012), aff'd, 732 F.3d 17 (1st Cir. 2013) ................................14

Feliciano v. Rhode Island,
160 F.3d 780 (1st Cir. 1998)..........................................................................................7

Heraeus Kulzer LLC v. Omni Dental Supply,
No. 12-11099-RGS, 2013 U.S. Dist. LEXIS 91949
(D. Mass. July 1, 2013)....................................................................................................14

Iberia Foods Corp. v. Romeo,
150 F.3d 298 (3d Cir. 1998)..........................................................................7, 12, 16

K Mart Corp. v. Cartier, Inc.,
486 U.S. 281 (1988)........................................................................................................15

Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.,
112 F.3d 1296 (5th Cir. 1997) ................................................................................15

Montblanc-Simplo GmbH v. Staples, Inc.,
172 F. Supp. 2d 231 (D. Mass. 2001) ..............................................7, 14, 15, 16

Nexxus Prods. Co. v. CVS New York, Inc.,
188 F.R.D. 11 (D. Mass. 1999)....................................................................................17

Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.,
816 F.2d 68 (2d Cir. 1987).............................................................................................13

Rivera-Muriente v. Agosto-Alicea,
959 F.2d 349 (1st Cir. 1992)............................................................................................6

Sanchez v. Alvarado,
101 F.3d 223 (1st Cir. 1996).............................................................................................6

4824-4727-1599v.3

*Sebastian Int'l v. Longs Drug Stores Corp.*,
    53 F.3d 1073 (9th Cir. 1995) ................................................................................16

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
    982 F.2d 633 (1st Cir. 1992) ........................................................... *passim*

*Sullivan v. City of Springfield*,
    561 F.3d 7 (1st Cir. 2009) .................................................................................7

*Warner-Lambert Co. v. Northside Dev. Corp.*,
    86 F.3d 3 (2d Cir. 1996) ..................................................................................12

## STATUTES

New York State GBS § 369-B ..................................................................................2, 11

## RULES

Fed. R. Civ. P. 56(a) ................................................................................................6

iii

Defendants Sam's East, Inc. and Sam's West, Inc. (together, "Sam's Club"), by their attorneys, hereby oppose the motion for summary judgment of trademark infringement of plaintiff Monahan Products LLC ("Monahan"). Sam's Club's opposition is based upon this memorandum of law; the Declaration of Marc J. Jason (and exhibits); and Sam's Club's Counter-Statement of Undisputed Facts Pursuant to Local Rule 56.1.

I.     **INTRODUCTION**

Monahan's motion highlights its complete failure to assemble relevant evidence in this case. At the very least, the dearth of evidence supporting its trademark infringement claim together with the countervailing evidence raise genuine issues of material fact that prevent granting the motion. Specifically, Monahan cannot show that (1) the goods sold by Sam's Club are materially different from the goods sold by Monahan's "authorized" retailers, or (2) that the goods sold by Sam's Club are gray market goods imported into the United States without Monahan's authorization. The factual record simply does not support the trademark infringement claim. Recognizing the lack of evidence, Monahan uses the majority of its brief trying to inflate the motion with irrelevant information.

This case involves Sam's Club's sale of ███ UPPAbaby brand strollers manufactured by Monahan. Monahan's business model is to sell the UPPAbaby strollers to "authorized" retailers and distributors of its own choosing. Sam's Club, which is not one of Monahan's "authorized" retailers, procured the strollers *in the United States* through a supply chain that originated with Monahan. Monahan claims that Sam's Club's unauthorized sales constituted trademark infringement.[1]

The claim raises genuine issues of material fact. Under the "first sale doctrine," the

---

[1] Monahan's First Amended Complaint also includes claims for false advertising and related common law and state law claims. Monahan's motion only seeks summary judgment on its trademark infringement claim.

1

resale of genuine trademarked goods does not constitute trademark infringement, even if made without the trademark owner's consent. In view of the "first sale doctrine," in order for Monahan's claim for trademark infringement to succeed, it must prove that the UPPAbaby strollers sold by Sam's Club were "materially different" from those sold by Monahan. On this motion, Monahan does not do so, and at the very least does not establish the absence of genuine issues of material fact.

Monahan's principal argument is that the strollers sold by Sam's Club were "materially different" because Monahan's manufacturer's warranty does not apply to strollers purchased at "unauthorized" retailers such as Sam's Club. After many months of fact and expert discovery, however, the evidence shows that Sam's Club members who purchased UPPAbaby strollers were, in fact, permitted to register for the manufacturer's warranty. Thus, Monahan's assertion that the manufacturer's warranty only applies to strollers purchased from "authorized" retailers is not true.[2] Moreover, certain states, such as New York, prohibit manufacturers from limiting warranties solely for the reason that their goods are sold by a particular retailer.[3] Thus, in these states, Monahan is required to honor its manufacturer's warranty even if the strollers are purchased from unauthorized retailers.

Even if Monahan's manufacturer's warranty were not applicable to UPPAbaby strollers purchased at Sam's Club, this would not constitute a material difference because the items were at all times covered by the superior Sam's Club 100% Merchandise Satisfaction Guarantee.

---

[2] This highlights the fact that Monahan's decision whether or not to honor the warranty is a purely arbitrary one.

[3] *E.g.,* New York State GBS § 369-B.

Furthermore, there is no support in the record that the warranty constitutes a material difference in the goods. Specifically, there is no evidence as to whether the manufacturer's warranty factors into a consumer's decision to purchase UPPAbaby strollers. This lack of evidence means that Monahan cannot prove the materiality of its manufacturer's warranty.

In its attempt to portray the strollers sold by Sam's Club as materially different, Monahan improperly characterizes the strollers as "gray goods," i.e., strollers that were imported into the U.S. without Monahan's consent. However, the evidence shows that after Monahan imported the UPPAbaby strollers from its factory abroad, they did not leave the country again. The UPPAbaby strollers were not "gray goods," and the "first sale" doctrine applies to Monahan's sale of the strollers to its authorized distributor. Once again, there is at least a genuine issue of material fact as to whether the Sam's Club strollers were imported "gray goods."

For all of these reasons, there is at least a genuine issue of material fact as to the availability and materiality of Monahan's manufacturer's warranty.

## II.    FACTUAL BACKGROUND

Monahan is in the business of manufacturing and selling baby products, including its UPPAbaby strollers, to "authorized" retailers and distributors. (SOF ¶ 1[4].) Sam's Club is an operator of membership-only warehouse clubs and online retail platforms throughout the United States. (SOF ¶ 2.)

Toward the end of 2017, Sam's Club began marketing and selling genuine UPPAbaby strollers to its members via its website, SamsClub.com. These strollers were originally

---

[4] "SOF ¶ __" refers to the corresponding paragraph in Defendants' Statement of Material Facts in Support of Their Motion for Partial Summary Judgment. (ECF No. 70.)

4824-4727-1599v.3

manufactured abroad and imported into the United States by Monahan. (Monahan Br.[5] 5.) Monahan sold the strollers at issue to its authorized distributor, Global Brand and Leasing ("Global"). Global then sold the strollers to a company called Akstrom Imports Inc. ("Akstrom"), and Akstrom sold the strollers to Sam's Club. (Monahan Br. at 6.) As discussed below, in these transactions, the strollers did not leave the U.S. prior to purchase by Sam's Club.

### A. UPPAbaby Strollers Sold by Sam's Club

The strollers sold by Sam's Club were genuine UPPAbaby strollers. (ECF No. 77-3, Harris Decl. Ex. B (Apotheloz Dep.), at 79.) The packaging and labelling remained as prepared by Monahan, other than the addition of a Sam's Club item number (UPC code) on the box. (ECF No. 77-5, Harris Decl. Ex. D (Claypool Dep.), at 56.)[6] The UPPAbaby strollers sold by Sam's Club even included Monahan's manufacturer's warranty card in the box. (Jason Decl.[7] Ex. 5, at 5-6.)

### B. Monahan's Manufacturer's Warranty

Monahan's manufacturer's warranty covers manufacturer's defects only. The warranty contains a list of conditions in which the warranty does not apply, such as misuse or poor maintenance; improper installation of parts; corrosion, mold, or rust; damage by the sun or by detergents; and general wear and tear. (First Amended Complaint, Ex. 2, ECF No. 12-2.) The warranty also does not provide for refunds or exchanges.

---

[5] "Monahan Br." refers to Monahan's brief in support of its Motion for Summary Judgment of Trademark Infringement. (ECF No. 77.)

[6] Monahan mischaracterizes the testimony and asserts that Sam's Club "repacked and relabeled" the UPPAbaby strollers during the shipping process. (Monahan Br. 6.) However, this was not true, and it contradicts the actual testimony of Sam's Club's employee, Lucy Claypool.

[7] "Jason Decl." refers to the Declaration of Marc J. Jason filed herewith.

The extremely narrow scope of the manufacturer's warranty was confirmed by Monahan's Rule 30(b)(6) witness, Joanne Apotheloz:

> Q. What if a stroller doesn't have a manufacturing defect? What if it's damaged from shipping or handling by the retailer? Does the warranty cover that?
>
> A. No.

(ECF No. 77-3, Harris Decl. Ex. B (Apotheloz Dep.), at 66.)

> Q. What happens if a customer buys an UPPAbaby stroller and they just change their mind? They don't want the stroller anymore. They want to return it. Would they get their money back? Under this warranty, would it be possible for a customer to just get their money back?
>
> A. No, never. They go back to the retailers, and each retailer has their own return policy.

(*Id*. at 72.)

> Q. Let's say a customer – if there is a manufacturing defect, say there's something wrong with the wheel and the customer just wants a new stroller. Will Monahan exchange the stroller?
>
> A. No.

(*Id*. at 74.)

Monahan's witnesses also testified that the UPPAbaby strollers rarely have manufacturing defects, which begged the question of the value of Monahan's warranty to consumers. Ms. Apotheloz responded as follows:

> Q. To your knowledge, this warranty hasn't come into play with manufacturing defects that have needed to be repaired?
>
> A. No.
>
> Q. Okay. Never?
>
> A. To my knowledge, no.
>
> Q. If that's the case, what's the value of the warranty?
>
> A. It's marketing. It's more than marketing. It's part of the brand where they know they'll be taken care of with their product from UPPAbaby.

5

(*Id.* at 75-76.)  Therefore, Monahan's warranty is a marketing ploy.

### C.    Sam's Club's 100% Merchandise Satisfaction Guarantee

The Sam's Club 100% Merchandise Satisfaction Guarantee covered (and continues to cover since it has no time limitation) all UPPAbaby strollers sold by Sam's Club.  Whereas Monahan places numerous conditions on its manufacturer's warranty "for its own protection, and the protection of its authorized retailers" (Monahan Br. 5), Sam's Club places no such conditions on its guarantee of UPPAbaby strollers.  (Jason Decl. Ex. 2; Jason Decl. Ex. 1, at 22.)  Under the 100% satisfaction guarantee, Sam's Club members can return their UPPAbaby strollers for any reason whatsoever (or for no reason at all) and receive either a full refund or, while supplies lasted, a brand-new stroller.  (*Id.*)

So, when Sam's Club's witness Jennifer Olivero testified that "we don't care about the [manufacturer's] warranty" (Monahan Br. 2; ECF No. 77-6, Harris Decl. Ex. E (Olivero Dep.), at 140, 151), it was because Sam's Club's own superior 100% satisfaction guarantee rendered Monahan's warranty irrelevant.

## III.   LEGAL STANDARD

### A.    Legal Standard for Summary Judgment

Summary judgment is warranted if the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'"  *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996) (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

6

A court will disregard "conclusory allegations, improbable inferences, and unsupported speculation" in determining whether a genuine factual dispute exists. *Sullivan v. City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (citation omitted). The "plaintiff . . . [must] offer[]. . . 'significant probative evidence tending to support the complaint.'" *Feliciano v. Rhode Island*, 160 F.3d 780, 784 (1st Cir. 1998) (quoting *Anderson*, 477 U.S. at 256).

**B.     Legal Standard for "Material Difference" in Goods**

Gray market goods may be found to be infringing if the goods are materially different from the goods authorized for sale in the United States. *Montblanc-Simplo GmbH v. Staples, Inc.*, 172 F. Supp. 2d 231, 236 (D. Mass. 2001). "The First Circuit has held, in the context of a gray market goods case, that the 'pivotal determinant' of Lanham Act infringement under both § 32 and § 43(a) is the presence of physical or other 'material differences' likely to confuse consumers between the goods." *Id.* (citing *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639-40 (1st Cir. 1992)); *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302-03 (3d Cir. 1998) (citations omitted) ("trademark owner attempting to use § 32 to prevent an infringement must establish that the products sold by the alleged infringer are not 'genuine'" by showing that "material differences" exist between the products). The First Circuit has defined a "material" difference as "any difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product." *Nestle*, 982 F.2d at 641.

**IV.     ARGUMENT**

Because there are genuine issues of material fact in the record as to (i) whether the UPPAbaby strollers sold by Sam's Club goods are materially different from the strollers sold by Monahan's authorized retailers; and (ii) whether the UPPAbaby strollers sold by Sam's Club are

7

gray market goods, this Court should deny Monahan's motion for summary judgment of trademark infringement.

### A. No Evidence of Material Difference Between UPPAbaby Strollers Sold at Sam's Club and Those Sold at "Authorized" Retailers

The crux of Monahan's argument is that "[t]he Sam's Club 'Guarantee' is materially different from the Monahan Warranty such that consumers would consider the differences relevant when purchasing a product." (Monahan Br. 14.) However, there is no evidence whatsoever to support this thesis. There is no evidence from any of Monahan's "authorized" retailers, nor from any consumers that any consideration at all is given to the manufacturer's warranty. Monahan's two expert witnesses, Ross Fishman and Krista Holt, offered no opinion on the materiality of the warranty. Nor did Monahan or its experts do any survey or study to ascertain the materiality of the warranty to consumers.

#### a. Monahan's Manufacturer's Warranty Has No Impact

Monahan touts its "strong" manufacturer's warranty as "safeguard[ing] the goodwill of its UPPAbaby® brand." (Monahan Br. 2, 4.) This raises a genuine issue of material fact. There is no evidence that this is the case; and, in reality, the evidence shows that the warranty is so narrow that it serves as nothing more than a flimsy marketing tool for Monahan. According to the testimony, Monahan's warranty appears to be worthless to consumers. (ECF No. 77-3, Harris Decl. Ex. B (Apotheloz Dep.), at 75-76.)

There is not a shred of evidence that the warranty had any influence on consumers' purchasing decisions. There are no documents, no testimony, and no expert opinions to support this conclusion. The two purported customer service calls that Monahan references in its papers

8

certainly do not support Monahan's assertion of materiality of the warranty.[8]  The first call (ECF No. 77-14, Harris Decl., Ex. M) is from a Sam's Club customer service representative seeking information on the UPPAbaby product.  This call is totally irrelevant to the issue of the manufacturer's warranty or its materiality to consumers.

The second call referenced by Monahan (ECF No. 77-15, Harris Decl., Ex. N) was from a prospective UPPAbaby customer.  She was looking at UPPAbaby strollers on SamsClub.com and was "confused" about the composition of UPPAbaby stroller handles (leather vs. foam), which Monahan had changed from its 2017 to 2018 models.  During the call, **the UPPAbaby customer service representative raised the issue of the manufacturer's warranty** and indicated that it would not apply to purchases from Sam's Club.  As evidenced by the customer's ensuing silence on the matter, she did not care at all about the warranty and totally ignored the sales representative's admonition.  Rather, she continued to express her confusion about the composition of the stroller handles, which had been changed by Monahan.  To the extent that this call constitutes admissible evidence, it supports the position that Monahan's manufacturer's warranty is NOT a material consideration for consumers.

Other statements made by Monahan also do not support its position.  For example, Monahan asserts that it "has confidence in its Monahan Warranty because Monahan takes care to minimize the number of steps in its supply chain to reduce potential damage and maintain quality control."  (Monahan Br. 5.)  However, since Monahan's warranty is so narrow and does not

---

[8] During fact discovery, Monahan produced alleged phone records from its customer service department, a total of sixteen calls.  No foundation was ever laid for these calls, and they were not authenticated in any way.  That being said, the calls have almost no relevance to Monahan's claims.

4824-4727-1599v.3

cover issues such as shipping damage, Monahan's praise for its own supply chain is irrelevant to the warranty and its materiality.

Monahan also makes much of the purported training and support it gives to its "authorized" retailers, including how to service products and help consumers to understand various product features. "The training and support provided by these representatives is invaluable to both stores and end-customers, because Monahan sells different products for different needs, and expecting or first-time parents may not always have the experience to know what features they need at a given time in their child's development." (Monahan Br. 4.) That training and support may or may not be useful, but it is completely irrelevant to the issue of the materiality of Monahan's manufacturer's warranty. As testified by Ms. Apotheloz, no repairs have ever been made to UPPAbaby strollers under the manufacturer's warranty; and the warranty is irrelevant to giving advice to customers. (ECF No. 77-3, Harris Decl. Ex. B (Apotheloz Dep.), at 75-76.)

### b. Sam's Club Purchasers Were Covered by Monahan's Warranty

Interestingly, although Monahan asserts that its manufacturer's warranty did not apply to UPPAbaby strollers purchased at Sam's Club, additional records of Monahan's customer service center suggest the contrary. Of the ███ purchasers of the UPPAbaby stroller from Sam's Club, it appears that two consumers contacted UPPAbaby customer service seeking to register their strollers for the manufacturer's warranty. In both instances, Monahan registered the strollers over the phone, even though they were purchased at Sam's Club. (Jason Decl. Exs. 5 & 6.)

In addition, Sam's Club purchasers were permitted to register their UPPAbaby strollers online. Lauren Monahan testified that purchasers of UPPAbaby strollers receive a three-year

manufacturer's warranty if they register the stroller with Monahan within three months of the purchase; and she then authenticated Monahan's records showing that Sam's Club customers were permitted to register their UPPAbaby strollers online. (ECF No. 77-2, Harris Decl. Ex. A (Monahan Dep.), at 58; Jason Decl. Ex. 7.) Thus, Monahan arbitrarily decides who is and who is not covered by its warranty. This arbitrary decision should not be the basis of a material difference in the goods.

Finally, states such as New York (where Monahan operates its sole "hub" for UPPAbaby stroller maintenance and warranty claim service) prohibit manufacturers from limiting warranties, which is what Monahan is alleging it has done in this case. New York's General Business Law states as follows:

> A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers . . . Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void.

(New York State GBS § 369-B.) Thus, as a matter of law in states such as New York, Monahan must honor the manufacturer's warranty even for UPPAbaby strollers purchased at retailers such as Sam's Club.

### c. Additional Alleged Differences Do Not Make the Strollers Sold by Sam's Club Materially Different

Through innuendo and insinuation, Monahan attempts to fabricate differences between the Sam's Club strollers and other UPPAbaby strollers that did not exist. For example, Monahan asserts that Sam's Club's supply and distribution chains "could cause damage or loss that could negatively impact the customer's perception of Monahan's brand," thereby providing "a further basis for finding material differences between the products sold by Sam's Club and authorized sales of UPPAbaby strollers." (Monahan Br. 17.) However, there is no evidence that

UPPAbaby strollers sold by Sam's Club were ever damaged in any way. Monahan cannot point to a single customer complaint, a single document, or a single line of testimony to support this assertion. There is no evidence whatsoever of a material difference resulting from the supply and distribution chains.

Similarly, Monahan asserts that "the amount of supervision and quality control" that it exercises over the products represents another material difference. (Monahan Br. 16-17.) However, there is no evidence in the record describing any quality control procedures employed by Monahan,[9] nor any evidence that Monahan's purported procedures differed from procedures employed by Sam's Club or its suppliers. Furthermore, Sam's Club's UPPAbaby strollers were in fact subject to Monahan's alleged procedures. All UPPAbaby strollers allegedly underwent quality control by Monahan at its factory abroad and in its Massachusetts warehouse. (*Id.* at 5.) Therefore, the Sam's Club strollers received the same quality control oversight by Monahan as strollers that were sold to "authorized" retailers.

### d. Warranty Alone Has Not Been Held to Make Goods Materially Different

"There is no mechanical way to determine the point at which a difference becomes 'material.' Separating wheat from chaff must be done on a case-by-case basis." *Nestle*, 982 F.2d at 641. However, Sam's Club has not found precedent in which a warranty alone is enough to make goods materially different.

---

9 "'[Q]uality control' is not a talisman the mere utterance of which entitles the trademark owner to judgment." *Iberia Foods Corp.*, 150 F.3d at 304. Rather, Monahan must allege sufficient facts to show that the quality control procedures are "[1] legitimate, [2] substantial, … [3] nonpretextual" and [4] that the trademark owner "abides by these procedures." *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996)

Each of the gray goods cases cited by Monahan is distinguishable from the instant case because there were significant physical, tangible differences between the authorized goods and gray market goods. For example, in the *Nestle* case, which involved imported chocolates, numerous differences existed:

- authorized chocolates were kept refrigerated during transportation, while gray market chocolates were not;
- ingredients of the authorized and gray market chocolates were different;
- authorized chocolates came in a greater variety of shapes;
- boxes, wrappers and trays of the authorized and gray market chocolates were different.

*Id.* at 642-43.

In this case, Monahan's argument rests principally on its warranty. Monahan's statement that "differences in warranty or service protection have long been held to be material differences that amount to trademark infringement under the Lanham Act" (Monahan Br. 12) is a mischaracterization of the law. It rephrases a footnote from the *Nestle* case in which the court stated in *dicta* that differences such as warranty protection or service commitments "may well render products non-identical." *Nestle*, 982 F.2d at 639 n.7.

Monahan also cites *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68 (2d Cir. 1987) (cited in the *Nestle* footnote), a case about Cabbage Patch Kid dolls. In *Original Appalachian*, the gray goods imported into the U.S. included Spanish language adoption papers and birth certificates, and an inability to process adoption papers or mail adoption certificates and birthday cards to doll owners. There is no reference to a warranty in the case.

Other courts have, however, considered warranties in evaluating whether goods are materially different. But while warranty differences have been considered, they have never

13

alone led to a determination that goods were materially different.  These cases, also cited by Monahan, are distinguishable from the instant case.

For example, in *Bose Corp. v. Ejaz*, No. 11-10629-DJC, 2012 U.S. Dist. LEXIS 130953 (D. Mass. Sept. 13, 2012), *aff'd*, 732 F.3d 17 (1st Cir. 2013), the warranty was one of numerous differences the court found between the U.S. and Australian Bose electronics systems, including: different DVD coding systems between Australia and the U.S.; different electrical voltage systems such that the correct electrical cord would not be in the package sold in Australia; the radio tuner would have to be modified to work in Australia.

Similarly, in *Heraeus Kulzer LLC v. Omni Dental Supply*, No. 12-11099-RGS, 2013 U.S. Dist. LEXIS 91949 (D. Mass. July 1, 2013) there were significant differences between authorized and gray goods in addition to the warranty.  The packaging of authorized goods was done in vibrant colors and modern, graphic designs, while the packaging of the gray goods was not.  The authorized packaging also was labelled in English, while the gray goods packaging had prominent Chinese characters near the label and provided contact information only for Germany. Finally, the gray market good seller did not employ any customer service staff to answer questions, whereas Heraeus America did.

In *Montblanc-Simplo GmbH v. Staples, Inc.*, 172 F. Supp. 2d 231 (D. Mass. 2001), the gray market Montblanc pens that were imported and sold at Staples had been "physically scarred" by the removal of trademarks and serial numbers and were prone to corrosion due to the removal of gold plating.  The court also considered Staples' removal of the owner's manual and warranty from the packaging.  In considering the evidence at the preliminary injunction phase, the court noted that "Montblanc, however, adduced no evidence demonstrating substantive

inferiority of the Staples warranty." *Montblanc-Simplo*, 172 F. Supp. 2d at 240. The court found the differences between the authorized and gray market pens, "taken as a whole," to be material. *Id.* at 241. However, the warranty did not appear to factor in the court's conclusion.

In all of the cases cited by Monahan there were numerous significant differences that led the various courts to hold goods to be materially different. That is not the case here.

**B.     UPPAbaby Strollers Sold by Sam's Club Were Not "Gray Market" Goods**

The strollers sold by Sam's Club were not "gray market" goods. A gray market good is a "foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *Montblanc-Simplo*, 172 F. Supp. 2d at 236 n.5 (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1299 n.2 (5th Cir. 1997)) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988)); *see also Nestle*, 982 F.2d at 635 (defining gray market products as trademarked goods manufactured abroad but "brought into this country in derogation of arrangements lawfully made by the trademark holder to ensure territorial exclusivity"). In this case, the UPPAbaby strollers sold by Sam's Club were not imported into the United States without Monahan's consent. Monahan characterizes the Sam's Club strollers as "imports" to show that they are somehow different from UPPAbaby strollers sold in the United States through "authorized" retailers. However, the unrefuted evidence in this case shows that the UPPAbaby strollers purchased and sold by Sam's Club never left the United States after being sold by Monahan. After Monahan shipped its strollers to a facility in the United States designated by its authorized distributor, Global, Global did not export the strollers. Instead, they were shipped to facilities in the United States. (Jason Decl. Exs. 3 & 4; ECF No. 77-3, Harris Decl. Ex. B (Apothelez Dep.), at 52-60.) Upon

15

subsequent sale from Global to Akstrom, the strollers were delivered to Akstrom's shipping/receiving center in New York. (*Id*.) Akstrom then sold the strollers to Sam's Club, and they remained in the United States en route to Sam's Club's warehouse and distribution facilities. (Monahan Br. 6.)

In view of this supply chain, Monahan's continual assertions that Sam's Club "imported" the UPPAbaby strollers is **false**. The constant references to Sam's Club's "imports" and an alleged "import scheme" reflect Monahan's disingenuous efforts to infuse the UPPAbaby strollers sold by Sam's Club with "material differences" that simply did not exist and to shoe-horn the UPPAbaby strollers sold by Sam's Club into the category of "gray goods."

As summarized above, the strollers were manufactured abroad and then imported by Monahan. (*E.g.*, Monahan Br. 5.) The strollers that Monahan sold to its authorized distributor, Global, never left the United States before being sold to Sam's Club. Moreover, the strollers that Monahan sold to its authorized retailers domestically were identical to the strollers that Monahan sold to Global: identical products, packaging, labelling, and warranty cards. Since the Sam's Club strollers were not materially different "gray goods" imports, Monahan's trademark infringement remedies were exhausted upon Monahan's first sale of the goods to its authorized distributor, Global.

"Under the "first sale doctrine, the trademark protections of the Lanham Act as to a particular item are exhausted after the trademark owner's first authorized sale of that individual product." *Montblanc-Simplo*, 172 F. Supp. 2d at 236 (citing *Iberia Foods Corp.*, 150 F.3d at 301 n.4) (citing *Sebastian Int'l v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) ("The 'first sale' rule is not rendered inapplicable merely because consumers erroneously believe the

reseller is affiliated with or authorized by the producer.")). Thus, as a general rule, trademark law does not "reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *Nestle*, 982 F.2d at 638 (citations omitted); *see also Nexxus Prods. Co. v. CVS New York, Inc*., 188 F.R.D. 11, 15 (D. Mass. 1999).

In this case, Monahan's manufacturer's warranty does not give rise to trademark infringement by Sam's Club for numerous reasons. First, there is no evidence that the warranty makes the strollers materially different. Second, Sam's Club purchasers did, in fact, receive coverage under the Monahan warranty. Third, the law in some states, such as New York, require that Monahan's warranty cover purchases at Sam's Club. Fourth, the warranty alone is insufficient to make the strollers materially different, and there is no evidence of other material differences. Fifth, the Sam's Club 100% merchandise satisfaction guarantee is more comprehensive than Monahan's warranty. Finally, the first sale doctrine applies.

## V.  CONCLUSION

For the reasons set forth above, Monahan's motion for summary judgment of trademark infringement should be denied.

Dated:   January 6, 2020           AMSTER, ROTHSTEIN & EBENSTEIN LLP
         New York, New York

                                   By: *s/ Marc J. Jason*_____
                                       Anthony F. Lo Cicero
                                       Marc J. Jason
                                       90 Park Avenue
                                       New York, New York 10016
                                       Tel:  (212) 226-8000
                                       Fax:  (212) 336-8001
                                       Email:  alocicero@arelaw.com
                                               mjason@arelaw.com

4824-4727-1599v.3

*Attorneys for Defendants Sam's East, Inc. and Sam's West, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 6, 2020, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF TRADEMARK INFRINGEMENT**, by electronic mail upon the following counsel of record:

*s/ Marc J. Jason*_____
Marc J. Jason

4824-4727-1599v.3