UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

MONAHAN PRODUCTS LLC
d/b/a UPPABABY,

        Plaintiff,

  v.

SAM'S EAST, INC. and
SAM'S WEST, INC.,

        Defendants.

Case No. 18-cv-11561 (FDS)

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................3

    A. No Basis for Award of Corrective Advertising Costs ............................3

        1. "Evidence" Cited by Monahan Does Not Support Corrective Advertising Remedy ..................................................................................................5

    B. No Basis for Award of So-Called "Extra Expenses"..............................10

    C. No Basis for Disgorgement of Profits.....................................................13

    D. No Basis for Massachusetts Unfair Competition Claim ........................13

III. CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*,
    999 F.2d 1 (1st Cir. 1993) .................................................................................................. 13

*Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.*
    116 F.2d 708 (7th Cir. 1941) ............................................................................................ 2, 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................................................. 1

*First Act, Inc. v. Brook Mays Music Co.*,
    429 F. Supp. 2d 429 (D. Mass. 2006) .................................................................................... 3

*Fishman Transducers, Inc. v. Paul*,
    684 F.3d 187 (1st Cir. 2012) ............................................................................................ 3, 13

*Nat'l Fire Prot. Ass'n v. Int'l. Code Council, Inc.*,
    No. 03-10848-DPW, 2006 U.S. Dist. LEXIS 14360 (D. Mass. Mar. 29, 2006) .................. 3, 4

*PODS Enters., Inc. v. U-Haul Int'l, Inc.*,
    126 F. Supp. 3d 1263 (M.D. Fla. 2015) ................................................................................ 5

*Skydive Ariz., Inc. v. Quattrocchi*,
    673 F.3d 1105 (9th Cir. 2012) ............................................................................................. 10

**RULES**

Fed. R. Civ. P. 56(c)(2) ................................................................................................................ 5

4818-6574-6864v.1

Defendants Sam's East, Inc. and Sam's West, Inc. (together, "Sam's Club") hereby file this reply in further support of their motion for partial summary judgment directed to plaintiff Monahan Products LLC ("Monahan")'s damages claims and its state law unfair competition claim.

I. **INTRODUCTION**

Monahan's opposition to Sam's Club's summary judgment motion confirms that the motion should be granted. Conspicuously absent are specific facts and admissible evidence demonstrating that Monahan has been damaged by Sam's Club's allegedly improper activities. Instead, Monahan offers no more than unsupported allegations of lost goodwill, damaged brand reputation, frustrated retailers, and confused customers.

Sam's Club's motion maintains that Monahan has no basis for recovery under any of its three damages theories: (1) the costs of future corrective advertising; (2) so-called "extra" expenses, i.e., compensation for salaried employees' time; and (3) disgorgement of Sam's Club's profits. In failing to proffer admissible evidence of any of these alleged harms, Monahan fails to meet the standard of "set[ting] forth **specific facts** showing that there is a genuine issue for trial."[1]

With respect to its claim for corrective advertising costs, Monahan still has not specified any *identifiable harm* that it has suffered. There is no *evidence* of harm to the UPPAbaby brand reputation or to Monahan's goodwill. There is no *evidence* of adverse effects on retailers. There is no *evidence* of adverse effects on consumers. As a result, there is no basis for a determination that corrective advertising would be a suitable remedy, or that corrective advertising would repair any alleged harm. This evidentiary failure reflects Monahan's

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (footnotes omitted) (emphasis added).

1

fundamental misunderstanding of the law. An award of corrective advertising must remedy identifiable harm and be "determinable-with-reasonable-certainty." As such, it is rarely awarded in Lanham Act cases, and Monahan has not provided any reason why it should be awarded in this case. Its claim for corrective advertising costs must fail.

With respect to the so-called "extra expenses" that Monahan seeks to recover, it fails to provide legal or factual justification for such an award under the Lanham Act. The principal case it cites in support is an irrelevant Seventh Circuit case from 1941, 5 years before the Lanham Act was even enacted.[2] Moreover, Monahan admits that the "UPPAbaby Loss Assessment" document it relies on was "created in August 2019," after the July 12 fact discovery deadline. (Monahan Opp'n Br. 15.) Consequently, Monahan should not be permitted to rely on this document that it fabricated after fact discovery closed. With no legal or factual support, Monahan's claim for "extra expenses" must fail.

As for disgorgement of Sam's Club's profits, Monahan fails to rebut the key fact that Sam's Club and Monahan are not competitors, and therefore Monahan is not entitled to disgorgement of Sam's Club's profits under this Circuit's law. Instead, Monahan asserts that "Sam's Club competes directly with many of Monahan's largest authorized retailers, including Amazon." (Monahan Opp'n Br. 17.) While this may be so, Monahan's authorized retailers are not parties to this action, and this argument avoids the fact that Monahan and Sam's Club are **NOT** themselves competitors. Monahan also argues without any evidence that Sam's Club has caused Monahan to lose sales that it otherwise would have made. (*Id.* at 16, 18.) These unsupported allegations are not enough to show that "defendant's profits would have gone to the

---

[2] *Aladdin Mfg. Co. v. Mantle Lamp Co. of Am.* 116 F.2d 708 (7th Cir. 1941).

plaintiff" as required under the case law. Therefore, Monahan is not entitled to a disgorgement of Sam's Club's profits.

Finally, Monahan's opposition provides no basis for sustaining its claim under the Massachusetts unfair competition statute. Monahan fails to even acknowledge the *Fishman Transducers*[3] case which holds that wrongful actions must have "occurred primarily and substantially within" Massachusetts. Monahan's whimsical arguments (for example, that "UPPAbaby strollers can readily be found being pushed by new parents through the streets of Boston" at Monahan Opp'n Br. 19) do not overcome its admission that "Sam's Club's advertisement and unauthorized sale of UPPAbaby strollers took place throughout the United States." (Monahan Resp. to SOF ¶ 25.) Therefore, Monahan cannot sustain a claim under this statute.

II. **ARGUMENT**

    A. **No Basis for Award of Corrective Advertising Costs**

Monahan mischaracterizes, or misunderstands, Sam's Club's argument regarding corrective advertising. Monahan asserts that "Sam's Club errs as a matter of law by arguing that corrective advertising damages are not available under the Lanham Act." (Monahan Br. at 6.) This simply is not correct. Sam's Club recognizes that corrective advertising costs may be awarded in Lanham Act cases; but such awards are rare and have been characterized in this District as "a somewhat novel theory of damages that has been limited in its application." *First Act, Inc. v. Brook Mays Music Co.,* 429 F. Supp. 2d 429, 438 (D. Mass. 2006). For such an award to be warranted, it must compensate for ***identifiable harm to reputation***. *First Act*, 429 F. Supp. 2d at 438. Furthermore, an award of corrective advertising must be "determinable-with-reasonable-certainty" and must not provide a windfall to the plaintiff. *Nat'l Fire Prot. Ass'n v.*

---

[3] *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187 (1st Cir. 2012).

3

4818-6574-6864v.1

*Int'l. Code Council, Inc.*, No. 03-10848-DPW, 2006 U.S. Dist. LEXIS 14360, *95 (D. Mass. Mar. 29, 2006). These conditions are not met by Monahan and, therefore, there is no basis for the award Monahan seeks.

Monahan clearly recognizes its failure to assemble evidence to justify corrective advertising, and it cites the *Nat'l Fire* case for the proposition that "direct evidence is not required to establish harm to goodwill on summary judgment." (Monahan Opp'n Br. 3 (quoting *Nat'l Fire*, 2006 U.S. Dist. LEXIS 14360, *95).) However, *Nat'l Fire* also provides that if there is not direct evidence of harm, there must at least be circumstantial evidence. Monahan provides **NO** evidence at all, neither direct nor circumstantial, of harm to goodwill.

Monahan asserts repeatedly throughout its opposition brief that Sam's Club "caused harm to Monahan's brand and reputation" (Monahan Opp'n Br. at 5), that Monahan "has presented ample evidence of harm to its reputation" (*Id.* at 7), and that Sam's Club "ignores evidence" of actual confusion among its own customers and potential customers (*Id.* at 11). However, there is no evidence of any of this in the record. Monahan's fact witnesses, Lauren Monahan and Joanne Apotheloz, proffer no more than vague and unsubstantiated generalities, conjecture and hearsay about Monahan's retail customers and consumers. The customer service recordings that Monahan refers to do not demonstrate any customer confusion or harm to Monahan's reputation or goodwill whatsoever (in addition to being offered without any foundation or authentication).

Additionally, Monahan's expert witnesses do not offer any evidence supporting an award of corrective advertising costs. Damages expert, Krista Holt, did no analysis regarding UPPAbaby brand value or goodwill. She offered no opinion or quantification of harm to the UPPAbaby brand value. She simply adopted the opinion of Monahan's marketing and branding "expert" Ross Fishman in her report. Mr. Fishman, despite being engaged as a marketing and

4

branding expert, did no analysis of UPPAbaby brand value or goodwill. As he testified, he simply assumed damage to brand reputation. In sum, there is literally **NO** evidence to support Monahan's claim.

Interestingly, the principal case that Monahan cites in favor of corrective advertising is *PODS Enters., Inc. v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263 (M.D. Fla. 2015). The plaintiff's expert in the *PODS* case on the issue of corrective advertising was Dr. Russell Winer, who is Sam's Club's expert in this case. Dr. Winer has opined that Ross Fishman, Monahan's marketing expert, provided corrective advertising cost estimates that "are worthless and not based in fact." (ECF No. 75-11, Jason Decl. Ex. 11 (Winer Report), at 11.)

### 1. "Evidence" Cited by Monahan Does Not Support Corrective Advertising Remedy

Monahan's meager attempts to go beyond attorney argument and provide factual support for its corrective advertising claim are not successful. Its brief does not cite to any admissible evidence of identifiable harm and, therefore, no genuine issue of material fact is raised. As reflected in the Federal Rules, the party opposing summary judgment must do so with admissible evidence. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

#### a. Lauren Monahan Proffers No Supporting Evidence

Monahan cites to the deposition testimony of its principal, Lauren Monahan, to support its argument that "the sale of strollers by Sam's Club undercuts brand value and reputation by causing customers to question Monahan's product quality, pricing, and even its success as a company."[4] (Monahan Opp'n Br. 12.) The cited testimony of Ms. Monahan (ECF No. 101-4,

---

[4] As with all of the arguments throughout Monahan's brief, this statement ignores that Monahan's trademark infringement and false advertising claims are based on the warranty issue

5

Harris Decl. Ex. D (Monahan Dep.), at 43:10-45:17) is a generalized, long-winded commentary about retailers' alleged "concerns" about sales at discount retailers (following up on the statement that "There had been a great deal of concern among our retail partners about our UPPAbaby products being sold in Sam's Club . . . ." (*id.* at 42:18-20)). This testimony is inadmissible hearsay regarding retailers' issues and is not evidence of that the UPPAbaby brand suffered any brand damage in this case.

One is left to wonder why there is no direct evidence from any retailer to support Monahan's claim or corroborate Ms. Monahan's testimony? There is no declaration. There is no deposition testimony. There are no documents. However, even if Ms. Monahan's testimony were admissible, it does not show any *identifiable harm* to Monahan's reputation as a result of allegedly unlawful activity by Sam's Club. The testimony consists of nothing more than generalities and conjecture about what happens in "our industry" when goods are sold at "big box retailers." (*See* ECF No. 101-4, Harris Decl. Ex. D (Monahan Dep.), at 43:10-45:17.)

### b. Joanne Apotheloz Proffers No Supporting Evidence

Monahan also cites to the deposition testimony of its Rule 30(b)(6) witness, Joanne Apotheloz, to support its claim of brand damage. (Monahan Opp'n Br. 12.) As with Ms. Monahan, the testimony of Ms. Apotheloz consists of nothing more than generalities, conjecture, and inadmissible hearsay about customers. The cited testimony, that customers "start questioning about that lower-priced product" (*id.*) has nothing to do with alleged damage done by the warranty in this case, has nothing to do with specific harm to Monahan's brand or reputation, and is nothing more than generalized conjecture about what happens when "premium products" are sold at discount retailers. Ms. Apotheloz proffered no evidence of identifiable

---

and not on the mere fact that goods are being sold at Sam's Club at discount prices, which alone is not actionable.

6

harm suffered by Monahan. In fact, Ms. Apotheloz (Monahan's Rule 30(b)(6) witness) testified that no such harm had ever been quantified by Monahan.

> Q. Has any study or analysis been done by Monahan to quantify any damage to reputation and good will?
>
> Mr. Harris: Objection.
>
> The Witness: No.
>
> Q. Is that a no?
>
> A. No. not that I know of.
>
> Q. Do you know if there is an amount in mind that Monahan has placed on that reputation and goodwill?
>
> A. No.

(ECF No. 101-3, Harris Decl. Ex. C (Apotheloz Dep.), at 121.)

### c. Ross Fishman Proffers No Supporting Evidence

Mr. Fishman is Monahan's marketing and branding expert. Presumably, in view of his purported expertise, Mr. Fishman could have come up with some methodology to evaluate damage to Monahan's brand caused by Sam's Club. But he did not; he simply assumed damage to the brand. He testified as follows:

> Q. So are you assuming brand reputation damage?
>
> A. I am presuming that misstatements regarding – that could create confusion should be corrected.
>
> Q. Okay. But you say here that "UPPAbaby claims that these actions have damaged its brand reputation." Do you see where you have that in your report?
>
> A. Yes.
>
> Q. Did you do anything to verify that claim?
>
> A. No.

(ECF No. 101-1, Harris Decl. Ex. A (Fishman Dep.), at 59-60.)

> Q. Your report contains no analysis or methodology for quantifying the amount of alleged damage to Monahan's reputation and brand value; is that correct?
>
> Mr. Harris: Objection.
>
> A. That's correct.

(*Id.* at 151.)

Since Mr. Fishman provided no expert opinion regarding specific brand damage, Monahan cites his testimony about the hypothetical effects of lower priced goods in the marketplace. ("[I]f I can buy it cheaper, now I think it's that cheaper-priced quality or maybe it's defective or maybe there is a problem with it or maybe I got overcharged . . ." Monahan Opp'n Br. 12 (quoting ECF No. 101-1. Harris Decl. Ex. A (Fishman Dep.), at 158-159).) Once again, this is general testimony that has nothing to do with specific, ***identifiable*** harm allegedly suffered by Monahan in this case.

### d. Krista Holt Proffers No Supporting Evidence

Ms. Holt, Monahan's damages expert, also did no analysis of alleged harm to Monahan's brand or goodwill. She simply adopted Mr. Fishman's corrective advertising cost estimates (essentially consisting of a calculation of postage for 20+ million postcards or the cost to purchase Google search terms). Yet her deposition testimony is cited by Monahan as support for its allegations of brand damage. The quoted testimony ("because people thought [Sam's Club] w[as] an authorized reseller, they were calling and wanting [Monahan] to match the price. . . .") is improper ***fact*** testimony by an expert witness with no firsthand knowledge of the facts. (Monahan Opp'n Br. 12 (citing ECF No. 101-2, Harris Decl. Ex. B (Holt Dep.), at 49-50).) At

best this testimony is hearsay; at worst it is pure fabrication. Either way, it is not admissible evidence of identifiable harm to Monahan.

e. **Consumers Proffer No Supporting Evidence**

Monahan also cites alleged consumer communications in support of its allegations of brand damage, stating that customers "actually questioned" the quality of UPPAbaby strollers. (Monahan Opp'n Br. 12.) (Typical of Monahan's *modus operandi*, it laid no foundation for these documents and did not authenticate them. There has been no testimony from any UPPAbaby customers, nor have any been identified by Monahan as witnesses.) However, upon reviewing the actual interactions, it is clear that they do not support Monahan's allegations of brand damage.

The consumer reflected in Harris Declaration Exhibit R apparently was questioning whether the models sold by Sam's Club were the latest models due to the low price. The UPPAbaby customer service representative confirmed that the stroller was not the latest model. There was no discussion about product quality or any indication whatsoever that the UPPAbaby brand reputation had been damaged by Sam's Club.

The consumer reflected in Harris Declaration Exhibit W was inquiring why Sam's Club was an unauthorized dealer, and guessed potential reasons. In response, the UPPAbaby representative stated that "They are selling our products, however, they do not have a contract with us to sell our products." This exchange also does not show that consumers questioned the quality of UPPAbaby strollers, nor does it evidence identifiable harm to Monahan.

f. **New York Daily News Article is not Supporting Evidence**

The paucity of Monahan's evidence of identifiable harm is so glaring that it cites an irrelevant and inflammatory 2011 article in a New York tabloid newspaper to support its argument. (Monahan Opp'n Br. 12-13.) The article (about Walmart, not Sam's Club), which

9

was not produced in discovery, has nothing to do with this case, was written years before the events in this case took place, and is cited solely for the prejudicial effect that Monahan hopes it will have. The article is improperly listed in Monahan's "Table of Authorities." It is prejudicial, irrelevant, inflammatory and should be stricken. Notably, the author of the article, Steven Barrison, has not been identified by Monahan as a witness in the case.

B. **No Basis for Award of So-Called "Extra Expenses"**

Monahan provides no basis for an award consisting of reimbursement for salaried, executive employees' time spent allegedly remediating damage. Such expenses were not incremental, i.e., additional, since the employees' salaries were fixed and would have been incurred in any event; and the alleged expenses are not supported by admissible evidence.

The case law cited by Monahan in its opposition does not support its entitlement to this type of damage award. The 1941 case from the Seventh Circuit that Monahan cites (*Aladdin Mfg. Co.*, 116 F.2d 708) does NOT hold that such employee expenses are recoverable and does not even address the issue.

Monahan's second case, *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) is cited for the proposition that the court can consider forms of actual damage that include "a plaintiff's expenditures in building its reputation." (Monahan Opp'n Br. 14 (quoting *Skydive Ariz.*, 673 F.3d at 1113).) This quote from the Ninth Circuit decision is misleading at best. First, the so-called extra expenses that Monahan is seeking are not related to "building its reputation" as that phrase is meant in the *Skydive Arizona* case. The expenses considered in *Skydive Arizona* were those incurred in initially creating and building the brand over a significant amount of time. Second, those expenses were considered in the context of determining the value of the plaintiff's goodwill and brand reputation. With that information, the finder of fact was able to calculate the

10

value of lost goodwill and reputation. Thus, the *Skydive Arizona* court's consideration of expenditures in building reputation had nothing to do with the type of "extra expenses" that Monahan is seeking to recover in this case. And in any event, no quantifiable evidence of the value of goodwill or reputation was provided by Monahan.

In addition to there being no legal basis for Monahan's recovery, there also is no factual basis. Monahan once again relies on expert witness, Krista Holt, and her second-hand testimony about the factual underpinnings of the claim. She is cited as factual authority confirming the employee activities for which compensation is sought. (Monahan Opp'n Br. 14, 16 ("discussing mitigating steps taken").) At best, this is inadmissible hearsay. Furthermore, the sole basis for her discussion of the "mitigating steps," as reflected in the footnotes of her report, was the UPPAbaby Loss Assessment document, fabricated by Monahan after the close of fact discovery. (ECF No. 75-6, Jason Decl. Ex. 6 (Holt Report), at 32.)

The only fact witness that Monahan cites in support of this category of damage is Ms. Apotheloz. Her brief testimony about remediation steps undertaken, which is cited multiple times by Monahan (Monahan Opp'n Br. 14, 16 (citing ECF No. 101-3, Harris Decl. Ex. C (Apotheloz Dep.), at 42:5-15), was simply that Monahan traced the stroller serial numbers to find the source of Sam's Club's strollers. There is no testimony about alleged communications with retailers and consumers. Interestingly, the simple task of tracing serial numbers does not appear to be reflected in the UPPAbaby Loss Assessment document. Of course, Sam's Club was unable to question Ms. Apotheloz (Monahan's Rule 30(b)(6) witness on damages) on the UPPAbaby Loss Assessment document because it was fabricated by Monahan and produced after the close of fact discovery. Monahan does not cite to any other testimony of Ms. Apotheloz on this issue.

11

The only other fact evidence of "extra expenses" proffered by Monahan is a one-page "public" statement regarding Sam's Club purportedly disseminated by Monahan. (Monahan Opp'n Br. 14 (citing ECF No. 101-10, Harris Decl. Ex. J).) In addition to the lack of evidence showing that the costs for preparation of this statement was "additional" and not covered by fixed employee salaries, there is no evidence as to how long it took to prepare this one-page notice or to whom it was sent. Perhaps the corrective advertising for which Monahan seeks a seven-figure recovery was already achieved with this notice.

Incredibly enough, Monahan also cites Sam's Club's rebuttal expert on damages, Abel Teshome, in support of its claim for "extra expenses." (Monahan Opp'n Br. 16.) This reliance on Mr. Teshome is mystifying. As he wrote in his report, "The Holt Report does not appear to reference any facts or data corroborating the assumptions employed by Monahan in the UPPAbaby Loss Assessment. Instead, the Holt Report recites Monahan's *ipse dixit* representations of loss without advancing any independent analysis." (ECF No. 75-9, Jason Decl. Ex. 9 (Teshome Report), at 12.) Indeed, Mr. Teshome confirmed a total lack of evidence supporting the claim for "extra expenses."

Finally, Monahan has the audacity to blame Sam's Club for not obtaining enough discovery with respect to the UPPAbaby Loss Assessment. After admitting that Monahan created the document in August 2019, after the close of fact discovery, it asserts that Sam's Club "could have sought additional discovery, or otherwise sought relief from the Court." (Monahan Opp'n Br. 15.) Sam's Club had no reason to seek additional discovery in view of such a blatant violation of the discovery deadline. It is the plaintiff's burden to prove its case. And unlike Monahan, which had no compunction in burdening the Court with a meritless motion to compel

after the close of discovery, Sam's Club was not inclined to involve the Court in a discovery issue unnecessarily.

C. **No Basis for Disgorgement of Profits**

Monahan begins its argument on disgorgement of profits as follows: "Sam's Club's fraudulent and willful conduct caused Monahan and its authorized retailers to lose sales they would have otherwise made." (Monahan Opp'n Br. 16.) There is not a shred of evidence in the record supporting this blatant conjecture.

As Monahan recognizes, in order to be entitled to a disgorgement of Sam's Club's profits, Monahan must show that marketplace competition is such that Sam's Club's profits would have gone to Monahan. (Monahan Opp'n Br. 16 (citing *Aktiebolaget Electrolux v. Armatron Int'l, Inc.,* 999 F.2d 1, 5 (1st Cir. 1993)).) In this case, it is undisputed that Monahan earned its profits upon sale of the UPPAbaby strollers at issue to its distributor, Global. Monahan is a manufacturer and wholesaler, not a retailer. It does not compete with Sam's Club, and it is not possible that Sam's Club's profits on the same strollers also would have gone to Monahan. Monahan asserts that it "competes with Sam's Club by way of its sales to Amazon and other authorized retailers." (Monahan Opp'n Br. 18.) This does not mean that Monahan competes with Sam's Club, and it does not. Sam's Club competes with retailers. Therefore, there is no basis for disgorgement of Sam's Club's profits.

D. **No Basis for Massachusetts Unfair Competition Claim**

Monahan fails to address the *Fishman Transducers* case, in which the court considered the "center of gravity" test in the context of issues similar to those in this case. In *Fishman Transducers*, the plaintiff was a Massachusetts company, so all of the harm occurred in Massachusetts. Nevertheless, deceptive advertising and sales occurred all over the country, including in Massachusetts. Since the wrongdoing was not focused on Massachusetts, the

13

requirement of the statute that the wrongful actions "occurred primarily and substantially" in Massachusetts could not be satisfied.

Monahan argues that Sam's Club's motion is "devoid of factual support" on this issue. However, Monahan makes the following statement in its response to Sam's Club's statement of facts: "Monahan does not dispute that Sam's Club's advertisement and unauthorized sale of UPPAbaby strollers took place throughout the United States." (Monahan Resp. to SOF ¶ 25.) On the basis of this admission alone, Monahan cannot sustain its claim under the Massachusetts unfair competition statute. However, it is also interesting to note that the uppababy.com website referenced by Monahan in its brief (Monahan Opp'n Br. 19) has a page devoted to "The UPPAbaby HUB" in Brooklyn, New York.

III. **CONCLUSION**

For the foregoing reasons, Sam's Club's motion for partial summary judgment should be granted.

Dated: January 13, 2020   Respectfully submitted,

*/s/ Marc J. Jason*
Anthony F Lo Cicero (*Pro Hac Vice*)
Marc J. Jason (*Pro Hac Vice*)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 336-8000
Facsimile: (212) 336-8001
E-mail: alocicero@arelaw.com
E-mail: mjason@arelaw.com

Adam L. Littman
ARENT FOX LLP
The Prudential Tower
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6195

Fax: (617) 722-4939
E-mail: adam.littman@arentfox.com
***Counsel for Defendants Sam's East, Inc.
and Sam's West, Inc.***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on January 13, 2020, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send an email notification of such filing to registered participants. Any other counsel of record will receive the foregoing via e-mail in PDF format.

>*/s/ Marc J. Jason*
>Marc J. Jason

4818-6574-6864v.1