**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MONAHAN PRODUCTS LLC d/b/a UPPABABY,<br><br>        Plaintiff,<br><br>   v.<br><br>SAM'S EAST, INC. and SAM'S WEST, INC.,<br><br>        Defendants. | No. 1:18-cv-11561-FDS<br><br>REDACTED - PUBLIC VERSION |

**MONAHAN'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**
**OF TRADEMARK INFRINGEMENT**

# TABLE OF CONTENTS

Table of Contents .............................................................................................................. ii

Table of Authorities ......................................................................................................... iii

I.     There Is No Dispute That Sam's Club Sold Gray Market Strollers
Intended for Sale Overseas ................................................................................3

II.    Sam's Club Sold Materially Different Strollers..................................................6

      A.    Sam's Club Does Not Dispute That Its "Guarantee" Is Materially
Different from the Monahan Warranty ...................................................7

      B.    Sam's Club Does Not Genuinely Dispute Monahan's Lack of
Quality Control over Sam's Club's Gray Market Strollers, Which
Is A Material Difference ......................................................................11

      C.    Sam's Club Does Not Dispute That Differences in Service and
Support Monahan Provides to Customers of Authorized Retailers
are Material Differences ......................................................................15

      D.    Sam's Club's Arguments Regarding New York Law and
Monahan's Warranty Applicability are Irrelevant ...............................17

III.   Conclusion .......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................17

*Andrews v. Weatherproofing Techs., Inc.*,
   277 F. Supp. 3d 141 (D. Mass. 2017) .........................................................................1

*Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.*,
   603 F.3d 1133 (9th Cir. 2010) ....................................................................................8

*Bel Canto Design, Ltd. v. MSS Hifi, Inc.*,
   837 F.Supp.2d 208 (S.D.N.Y. 2011)..........................................................................14

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
   562 F.3d 1067 (10th Cir. 2009) ................................................................................15

*Bos. Duck Tours, LP v. Super Duck Tours, LLC*,
   531 F.3d 1 (1st Cir. 2008)............................................................................................1

*Bose v. Ejaz*,
   732 F.3d 17 (1st Cir. 2013)..........................................................................................4

*Bourdeau Bros., Inc. v. International Trade Com'n*,
   444 F.3d 1317 (Fed. Cir. 2006)...................................................................................4

*Chartier v. Brabender Technologie, Inc.*,
   2011 WL 4732940 (D. Mass. 2011) (Saylor, J.).......................................................17

*Dan-Foam A/S v. Brand Named Beds, LLC*,
   500 F. Supp. 2d 296 (S.D.N.Y. 2007).........................................................................9

*El Greco Leather Products Co., Inc. v. Shoe World, Inc.*,
   806 F.2d 392 (2d. Cir. 1986)..........................................................................11, 12, 14

*Goguen v. Textron Inc.*,
   476 F. Supp. 2d 5 (D. Mass. 2007) .............................................................................5

*Heraeus Kulzer LLC v. Omni Dental Supply*,
   2013 WL 3305284 (D. Mass. 2013) ............................................................................2

*Horta v. Sullivan*,
   4 F.3d 2 (1st Cir. 1993) .........................................................................................12, 17

*Iberia Foods Corp. v. Romeo*,
150 F.3d 298 (3d Cir. 1998)..................................................................4, 11, 13

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*,
112 F.3d 1296 (5th Cir. 1997) ...............................................................7

*Mithra Med. Supplies, Inc. v. Zhou*,
2010 WL 11601311 (C.D. Cal. 2010)....................................................9

*Montblanc-Simplo GmbH v. Staples, Inc.*,
172 F.Supp.2d 231 (D. Mass. 2001) ......................................................4, 14

*Philip Morris, Inc. v. Allen Distributors, Inc.*,
48 F. Supp. 2d 844 (S.D. Ind. 1999) ......................................................14

*Randall v. Potter*,
366 F. Supp. 2d 104 (D. Me. 2005) ........................................................2

*Sweetarts v. Sunline, Inc.*,
380 F.2d 923 (8th Cir. 1967) .................................................................8

*Warner-Lambert Co. v. Northside Dev. Corp.*,
86 F.3d 3 (2d Cir. 1996).........................................................................4

*Zino Davidoff SA v. CVS Corp.*,
571 F.3d 238 (2d Cir. 2009).................................................................11, 14

## Statutes

Fed. R. Civ. P. 56(c), (e) ............................................................................12

Monahan's *Motion for Summary Judgment of Trademark Infringement* should be granted because there is no material dispute of fact regarding Sam's Club's infringement of Monahan's UPPAbaby trademarks. Sam's Club infringed Monahan's registered trademarks by using them in its nationwide advertising of its gray market strollers and on its website, and by selling materially different UPPAbaby strollers bearing Monahan's trademarks.

Monahan has met its burden of showing that (1) its trademarks are entitled to trademark protection, and (2) that the infringing use is likely to cause consumer confusion. *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008). Sam's Club does not dispute that Monahan owns its trademarks, that they are valid, and that five of them are incontestable. *Def.'s Resp. to P.'s Statement of Material Facts*,[1] ¶¶ 1-12. Nor does Sam's Club dispute, or even address, that it used Monahan's trademarks in its advertising and on its website in order to sell UPPAbaby strollers, and that its strollers bore Monahan's trademarks. *Def.'s Resp.*, ¶¶ 39-41, 59-61.

Sam's Club does not dispute the essential facts related to its use of Monahan's trademarks or its sale of gray market UPPAbaby strollers. *See generally Def.'s Resp.* Instead, Sam's Club challenges the undisputed facts recited by Monahan, without disputing the substance of the allegations. *See Andrews v. Weatherproofing Techs., Inc.*, 277 F. Supp. 3d 141, 146 (D. Mass. 2017) (objections to statements of material fact that are unsupported by the record or that do not actually contradict the assertions made by the moving party cannot defeat summary judgment motion). For example, Sam's Club concedes that "Monahan's warranty information was filed as Exhibit 2 to its First Amended Complaint." *Def.'s Resp.*, at ¶ 14. Sam's Club does

---

[1] Citations to "Def.'s Resp." refer to *Defendants' Responses to Plaintiff's Statement of Undisputed Material Facts* filed on January 6, 2019. Dkt. 103.

not dispute that Monahan's warranty did not apply to products purchased from unauthorized retailers. *Id.* at ¶ 18. Sam's Club merely pleads ignorance as to the precise, technical definition of "Monahan Warranty" without explaining how any alleged ambiguity creates a material dispute. *See id.* at ¶¶ 13-19. Sam's Club's objections that do not dispute the underlying record cannot raise a triable issue of fact. *See e.g.*, *Randall v. Potter*, 366 F. Supp. 2d 104, 117 (D. Me. 2005).

Monahan has established that Sam's Club's gray market strollers (1) were not authorized for sale in the United States, and (2) are materially different from the authorized versions sold domestically. *Heraeus Kulzer LLC v. Omni Dental Supply*, 2013 WL 3305284, at *5 (D. Mass. 2013). Sam's Club does not dispute that it is not an authorized retailer of Monahan's strollers. *Def.'s Resp.*, ¶ 29; *Def.'s Opposition*, at 1. And there is no dispute that Sam's Club acquired its gray market strollers from ████████████, a Canadian company, who acquired the strollers from Global Branding and Leasing, a Panamanian company and Monahan's former retailer for Central America. *Def.'s Opposition*, at 4.

Sam's Club fails to identify a material, disputed fact regarding the differences between its "guarantee" and the Monahan warranty. There is no genuine dispute that Sam's Club knew the Monahan Warranty did not apply to the strollers sold by Sam's Club. Sam's Club admitted that it is not an authorized Monahan retailer and its supplier told Sam's Club that Monahan's Warranty did not apply. *Def.'s Resp.*, ¶ 53. By Sam's Club's own admission, there are numerous differences between Monahan's warranty and Sam's Club's "guarantee." *See e.g., Def.'s Opposition*, at 2-3, 6, 8. These differences are material and warrant a finding of trademark infringement as a matter of law.

Likewise, Sam's Club fails to identify any material disputed fact concerning the differences in customer service and quality control for UPPAbaby strollers. There is no dispute that Sam's Club's employees were not trained about Monahan's products, as Sam's Club's employees had to call Monahan's customer service department to respond to customer questions. *Def.'s Resp.*, ¶ 51. Sam's Club admitted that it took no steps to add, nor even contemplated, additional protection to Sam's Club's strollers before subjecting them to a longer channel of trade well beyond the steps that Monahan's strollers ordinarily take. Harris Decl. Ex. C ("Olivero Depo. Tr."), at 75:19-25; *Def.'s Resp.*, at ¶ 38.

There is no genuine dispute that Monahan owns valid trademarks, and Sam's Club used Monahan's trademarks to sell materially different UPPAbaby strollers. Accordingly, Sam's Club is liable, as a matter of law, for trademark infringement.

## I. THERE IS NO DISPUTE THAT SAM'S CLUB SOLD GRAY MARKET STROLLERS INTENDED FOR SALE OVERSEAS

There is no dispute that Sam's Club was unable to purchase authorized UPPAbaby strollers directly from Monahan and used its diverted goods team to acquire unauthorized UPPAbaby strollers. *See Monahan's SJ Mot.*, at 6-8. The diverted goods team purchased UPPAbaby strollers from international sources that were intended for sale in Central America and that were not authorized for sale in the United States. Sam's Club has failed to offer any competent evidence to raise a material dispute on this point. Sam's Club's unauthorized UPPAbaby strollers are therefore gray market goods.

The gray market strollers obtained by Sam's Club were intended for sale outside of the United States. Harris Decl. Ex. A ("Monahan Depo. Tr."), at 22:8-23:10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."); Harris Decl. Ex. B ("Apotheloz Depo. Tr."), at 44:2-8, 45:4-7.

Where goods were not authorized for sale in the United States, the sale of such goods is actionable under the Lanham Act. *See Societe*, 982 F.2d at 638 (focusing on whether the goods in question "were not authorized for sale in the United States"); *Bose v. Ejaz*, 732 F.3d 17, 20 (1st Cir. 2013) (goods were "gray market goods because … they are sold outside of their intended retail markets."); *Montblanc-Simplo GmbH v. Staples, Inc.*, 172 F.Supp.2d 231, 236 (D. Mass. 2001) ("the sale of gray market products may be found to violate the Lanham Act if the products (1) were not intended to be sold in the United States . . .").

Even if Sam's Club could dispute whether it intercepted UPPAbaby strollers intended for sale in Central America before those strollers left the United States, as opposed to after, it would not change the legal conclusion that Sam's Club sold gray market UPPAbaby strollers. "[G]ray market law is concerned with whether the trademark owner has authorized use of the trademark on that particular product in the United States and thus whether the trademark owner has control over the specific characteristics associated with the trademark in the United States." *Bourdeau Bros., Inc. v. International Trade Com'n*, 444 F.3d 1317, 1323 (Fed. Cir. 2006). Even cases cited by Sam's Club agree that the material differences analysis applies to both imported and *domestic* goods in competition with the trademark owner's goods. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) ("The same [gray market goods] theory has been used to enjoin the sale of domestic products in conditions materially different from those offered by the trademark owner."); *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996) (granting injunction on domestic Halls cough drops that were expired).

There is no dispute that Sam's Club's strollers were acquired from international sources. Sam's Club purchased its strollers directly from ██████████████████████ its source for diverted goods. *See Def.'s Opposition*, at 4; *Def.'s Resp.*, at ¶ 31. ██████ is a Canadian

company, ███████████████████████████, and its employees are located in

Canada. *See Def.'s Opposition*, Ex. 4, Dkt. 104-4 (email signatures denoting address in Canada).

There is no dispute that ██████, in turn, acquired its gray market strollers from Global

Branding and Leasing ("Global"), which is located in Panama. *See Def.'s Opposition*, at 15-16.

Global was only authorized to sell strollers abroad and not in the United States. Global is

a Panamanian company that was previously Monahan's authorized international retailer for only

Central America. *See* Ex. 3, Dkt. 104-3 (noting Panamanian billing address); *Apotheloz Depo.

Tr.*, at 42:5-43:13. Global was not permitted to sell strollers in the United States, as they would

compete with Monahan's domestic authorized retailers. *See Monahan Depo. Tr.*, at 22:8-23:10.

Because the strollers sold by Sam's Club were only authorized for sale in Central America,

Sam's Club's goods were not intended for sale in the United States, and therefore are gray

market goods. *See Societe*, 982 F.2d at 638.

Sam's Club fails to raise a disputed question of fact as to whether its strollers were

authorized for sale in the United States. The evidence it has cited only shows that the UPPAbaby

strollers it obtained passed from Akstrom's control and into the hands of Sam's Club. *See* Ex. 4,

Dkt. 104-4, at 2 ("████████████████████████████████████████████.").

████████ statement that ███████████████████████████ is contradicted by

Sam's Club's own admission that ██████ obtained its strollers from Global. *See id.*; *compare

Def.'s Opposition*, at 15-16 ("Upon subsequent sale from Global to ██████ . . ."). A party

opposing summary judgment cannot create a dispute of fact by contradicting its earlier sworn

testimony. *Goguen v. Textron Inc.*, 476 F. Supp. 2d 5, 15 (D. Mass. 2007).

Sam's Club's own documents demonstrate that it obtained UPPAbaby strollers from

international sources, through an international importer, for unauthorized sale in this country.

Global lied to Monahan when it was questioned about why its strollers were being sold by Sam's Club. *See* Harris Decl. Ex. E ("I told them it wasn't ours….anyway, I we will continue selling you…that's part of the business.").  Global then communicated Monahan's complaints to ████, who informed Sam's Club's "diverted" goods team of Monahan's objections.  *Id.*  Sam's Club and its suppliers were well aware that the strollers were unauthorized gray market goods that had been acquired in bad faith.  *Id.*  Sam's Club did not change its behavior and continued to sell gray market goods.  Sam's Club also falsely represented to customers that it was an authorized retailer for UPPAbaby products.  *Walmart Chat Excerpt*, Dkt. 77-13.

It is undisputed that Sam's Club's gray market UPPAbaby strollers were not authorized for sale in the United States, were not authorized for sale by Sam's Club, and were obtained from an international supplier who obtained them from a distributor for Central America.  Sam's Club failed to raise a material dispute as to any of these facts.  Thus, Monahan is entitled to summary judgment on its claim for trademark infringement.

## II.   <u>SAM'S CLUB SOLD MATERIALLY DIFFERENT STROLLERS</u>

Sam's Club failed to dispute the material differences between its gray market products and Monahan's authorized UPPAbaby strollers.  Sam's Club sold materially different strollers that were not protected by Monahan's warranty and that passed through an elongated channel of trade beyond Monahan's control.  Sam's Club representatives lacked the training and knowledge necessary to provide the level of service and support available from Monahan and its authorized retailers.  Any one of these material differences alone is sufficient to impose liability under the Lanham Act.  *Societe*, 982 F.2d at 640 ("the presence of *<u>a</u>* material difference. . .") (emphasis added).

## A. Sam's Club Does Not Dispute That Its "Guarantee" Is Materially Different from the Monahan Warranty

Sam's Club's *Opposition* supports Monahan's argument that the Monahan Warranty is materially different from the Sam's Club "guarantee." If either the Monahan Warranty is better than the Sam's Club guarantee, as Monahan argues, or the Sam's Club guarantee is better than the Monahan warranty, as Sam's Club argues, then there are material differences between Monahan's authorized UPPAbaby strollers and the strollers sold by Sam's Club through its gray market scheme. *See Def.'s Opposition*, at 2-3. Because the protections afforded by Sam's Club's guarantee are materially *different* from the Monahan Warranty, and both parties agree that it is, summary judgment is warranted.

The Lanham Act protects the goodwill of a trademark owner both in the obvious cases, where the infringer has sold inferior goods under the asserted trademark, "but also in the less obvious cases, involving the sale of goods different from, although not necessarily inferior to, the goods that the customer expected to receive." *Societe*, 982 F.2d at 636 (citing *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1216 (8th Cir. 1976)). Sam's Club is not the first trademark infringer to try to distract attention from its liability by arguing that its products were just as good as, if not better than, those sold by the brand owner. *Id.* "[B]ut *Nestle* flatly rejects this argument, holding that ***the plaintiff need not prove that the defendant's imports are of inferior quality to establish trademark infringement, only that they are materially different.***" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1302 (5th Cir. 1997) (citing *Societe*, 982 F.2d at 636).

Sam's Club makes numerous allegations regarding the differences between the Monahan Warranty and Sam's Club's guarantee that by themselves justify granting summary judgment to Monahan. Sam's Club repeatedly touts the alleged superiority of its guaranty, while disparaging

the protections granted by the Monahan Warranty. *See Def.'s Opposition*, at 2-3, 6, 8. Sam's Club argues its guarantee has no time limitation, while Monahan's does. *Id.* at 6. Sam's Club argues it will accept returns for any reason or no reason, while Monahan will not. *Id.* Sam's Club accuses the Monahan Warranty of being "narrow" in comparison to its guarantee. *Id.* at 8. Whether or not these statements are accurate representations of either Sam's Club or Monahan's respective protections is irrelevant, as both parties agree that the protections are materially different.

The law imposes liability for the sale of gray market products with materially different characteristics because the touchstone of trademark infringement is the likelihood of consumer confusion as to the product they expected to receive, not the inherent quality of the infringing product. *Societe*, 982 F.2d at 636. Regardless of the quality of infringing goods, ***a trademark owner need not put its reputation in the hands of another***:

> Plaintiff has the right to make and keep its own reputation without entrusting it to others over whom it cannot exercise any control. Some may treat it tenderly, nurture and enhance it, while others during the course of time may tarnish or degrade it; and the public is confused and suffers along with the infringed.

*Sweetarts v. Sunline, Inc*., 380 F.2d 923, 927 (8th Cir. 1967); *see also Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1139 (9th Cir. 2010) (alleged high quality of the junior user's goods is no defense, as courts have consistently found for the senior user "even where defendants are not selling lower quality goods.").

Sam's Club admits that its gray market sales impacted Monahan's ability to control its own reputation by arguing, contrary to law, that Monahan should have been forced to honor warranty claims on Sam's Club's unauthorized UPPAbaby strollers. *Def.'s Opposition* at 2, 10-11; *but see infra* Part II.D. Indeed, Sam's Club's *Opposition* highlights the difficult choice that Sam's Club forced on Monahan – whether to deny warranty claims to purchasers of unauthorized

strollers who were confused by Sam's Club into believing their strollers were covered by the Monahan Warranty and risk damage to its reputation for high quality service and support, or to service the strollers anyway in defense of its reputation, at its own expense, for strollers it never intended for sale in the U.S.  *See Def.'s Opposition* at 2, n. 2.

The likelihood of consumer confusion has been made worse by Sam's Club's false representations to customers that its UPPAbaby strollers were protected by a "6-month manufacturer warranty," and that it was an authorized retailer of Monahan's strollers.  *Def.'s Opposition*, at 6.  A defendant's "bad faith" representation that its goods were covered by a manufacturer's warranty is highly relevant to the Lanham Act's infringement analysis.  *Mithra Med. Supplies, Inc. v. Zhou*, 2010 WL 11601311, at *11 (C.D. Cal. 2010).  The only way for a defendant to avoid liability for trademark infringement for trafficking in gray market goods is "***to tell the truth, and the whole truth, and to tell it plainly***."  *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 319 (S.D.N.Y. 2007) (emphasis in original).  By Sam's Club's own admission, it did not do that, and still does not care.  *Def.'s Opposition*, at 6.

Sam's Club's unsupported allegation that the Monahan Warranty was "worthless" to consumers is contradicted by evidence showing more than ███ warranty claims processed by Monahan in three years.  *See e.g.*, Harris Decl. Ex. F.  Monahan customers value the warranty and rely upon it.  These same warranty claims also contradict Sam's Club's unsupported allegation that the Monahan Warranty is "narrow" in scope.  The breadth and depth of the service and support provided by Monahan shows that the Monahan warranty was materially important to ████████████ of Monahan customers, and supports Monahan's investment in a brand that is supported by its reputation for outstanding service and support.

Sam's Club's attempts to distinguish case law cited by Monahan, while citing none in support of its own argument, fail as a matter of law. Because this is a gray market goods case, Sam's Club, not Monahan, bears the burden of rebutting the presumption that the differences between the goods are the kind that consumers, on average, would likely consider in purchasing the product. *Societe*, 928 F.2d at 641. Sam's Club's *Opposition* does not carry its burden, and Sam's Club never sought discovery, or produced any evidence, to support any defense that the admitted differences in warranty and quality control would not be material to consumers. Rather, Sam's Club's *Opposition* supports Monahan's argument that non-physical differences in products, such as differences in warranty, service, and support, would be material differences to consumers. *See Def.'s Opposition*, at 13-14.

The cases cited by Sam's Club support Monahan's argument that non-physical differences, including differences primarily affecting the customer experience, can create a material differences between the authorized and gray market products. Sam's Club concedes that a trademark owner's refusal to issue "adoption papers" to gray market cabbage patch dolls can constitute a material difference from the authorized products. *See Def.'s Opposition*, at 13 (citing *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68 (2d Cir. 1987)). Likewise, the willingness of a trademark owner to make their customer service staff available to answer questions about authorized products, but not unauthorized goods, could also constitute a material difference. *Id.* at 14 (citing *Haraeus Kulzer LLC v. Omni Dental Supply*, 2013 WL 3305284, at *6 (D. Mass. 2013). Sam's Club fails to identify any case law to support a contention that warranty differences should be treated separately from other forms of service and support that have been held to be material differences between authorized and gray market products.

Sam's Club's gray market UPPAbaby strollers, which are not entitled to the protections of the Monahan Warranty, are materially different from UPPAbaby strollers sold through Monahan's authorized retailers. Sam's Club ignored evidence in its possession, admits rather than disputes its bad faith representations to customers, and fails to carry its burden of showing that the differences between the strollers were not material. Monahan's *Motion for Summary Judgment* should be granted.

### B.   Sam's Club Does Not Genuinely Dispute Monahan's Lack of Quality Control over Sam's Club's Gray Market Strollers, Which Is A Material Difference

In addition to the warranty, Sam's Club's gray market strollers are materially different from Monahan's strollers because Monahan is unable to maintain its quality control standards over Sam's Club's strollers. There is no material dispute that Monahan lacked the ability to control the quality of Sam's Club's goods, and that Sam's Club does not have many of the quality controls Monahan maintains.

"One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d. Cir. 1986). "[I]nterference with [a] trademark holder's legitimate steps to control quality unreasonably subjects the trademark holder to the risk of injury to the reputation of its mark." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243-244 (2d Cir. 2009); *see also Iberia Foods*, 150 F.3d at 304 (recognizing trademark owner's quality control and inspection procedures as basis of material difference between products). "[T]he substantial variance in quality control . . . creates a presumption of customer confusion as a matter of law." *Societe*, 982 F.2d at 643.

Monahan implements quality control procedures on its products to maintain their quality. Monahan provides its strollers with a suitable amount of packaging to protect them from damage

as they pass through Monahan's ordinary channel of trade. *Apotheloz Depo. Tr.*, at 66:2-67:17. Strollers are also assigned a UPC based on their model year, make, and color scheme, which also provides Monahan with the ability to track the strollers it sells. *See id.* at 19:18-24 (tracking used to identify source for Sam's Club's strollers); *see also* Ex. 4, Dkt. 104-4 (Sam's Club employees discussing UPC codes).

Sam's Club's *Opposition* fails to consider evidence regarding Monahan's quality control protections, and makes unsupported conclusory arguments. "Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact." *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993). Sam's Club cites to no evidence in the record supporting its conclusory statements regarding Monahan's alleged lack of quality control procedures. *Def.'s Opposition*, at 11-12. Nor does Sam's Club provide support for its contradictory argument regarding alleged quality control procedures that its strollers went through at Monahan's factory. *Id.* at 12. Sam's Club cannot create an alleged dispute of fact through conclusory arguments alone, absent particularized support of materials in the record. Fed. R. Civ. P. 56(c), (e).

Sam's Club also errs as a matter of law in arguing that evidence of physical damage to its infringing products is needed to prove that there are material differences in quality control. *Def.'s Opposition*, at 9-10. "The actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *El Greco*, 806 F.2d at 395. Courts have issued injunctions solely because of the trademark holder's inability to control the quality of the goods "[r]egardless of the offending goods actual quality." *Societe*, 982 F.2d at 640, 643 ("A showing that the alleged infringing product suffers in quality is not necessary to prove a Lanham Trade-Mark Act violation."). Even precedent cited by Sam's Club explains that "[b]ecause quality control measures may create subtle differences in quality that are difficult to measure but

important to customers, courts do not require trademark owners to show that the actual quality of the inspected goods is measurable higher than that of the uninspected goods." *Iberia Foods*, 150 F.3d at 304.

Monahan is not required to prove that Sam's Club's strollers were damaged, only that its inability to control the quality of the strollers is a material difference to purchasers. And Sam's Club's allegations of "no evidence" of damage to the strollers stems from its failure to produce evidence of why ███ of its ███ strollers were returned. *See Teshome Expert Report*, Dkt. 64-5, at 16. Sam's Club also failed to question Monahan's witnesses about Monahan's packaging and inspection procedures, or the ordinary channel of trade that Monahan's strollers pass through. Sam's Club cannot fail to produce evidence and then complain about its absence.

Nonetheless, Sam's Club's own evidence of its actual failure to maintain the quality of Monahan's strollers demonstrates that a material difference exists. There is no dispute that Sam's Club disregards Monahan's UPC system, which caused Sam's Club to advertise the sale of 2018 model strollers but deliver 2017 model strollers to its customers. Harris Decl. Ex. D, at 67:13-23. There is no dispute that Sam's Club's customers were confused about which stroller year model they would receive when purchasing from Sam's Club, which prompted them to complain on Sam's Club's website about the discrepancy. *See Amended Complaint*, Ex. 3, at 2. Likewise, there is no genuine dispute that Sam's Club's employees were not trained about UPPAbaby strollers, which required them to call Monahan's customer service team for product information. *See e.g.*, Ex. N, Dkt. 77-15; *Def.'s Resp.*, at ¶ 51.

Sam's Club's channel of trade adds extra steps that Monahan's products ordinarily do not endure. Sam's Club used trucks to move the goods cross-country to Sam's Club's warehouse in Searcy, Arkansas, where Sam's Club stores all of its "diverted" goods. *See* Ex. 4, Dkt. 104-4, at

6 ("█████████████.");  *Olivero Depo. Tr.*, at 56:21-23 ("██████████████

████."). There, Sam's Club took possession of the goods, de-palletized them, checked whether

they were counterfeit or "genuine," and stored them. *Olivero Depo. Tr.*, at 57:5-9, 58:5-6, 59:3-

11. Sam's Club then moved the goods to its fulfilment centers across the country, where it

prepared individual strollers for mailing, and sent them to customers' homes. *Id.*, at 57:20-25.

There is no dispute that Sam's Club failed to take any steps to maintain the safety of its

strollers, despite its additional shipping steps. There is no dispute that Sam's Club only

inspected a random sample of its strollers at its Searcy warehouse to confirm the goods were

"███████████████," but not whether they are damaged. *See id.* at 55:6-8. Sam's

Club did not add any additional packaging to protect its strollers from damage. *Id.* at 75:19-25;

*Def.'s Resp.*, at ¶ 38. Indeed, Sam's Club did not even consider whether to add additional

packaging. *Id.* Nor did Sam's Club remove the warranty card from its stroller boxes, despite its

full knowledge that Monahan's warranty did not apply to its strollers. *Def.'s Opposition*, at 4;

*see infra* Part II.C.

Sam's Club's failure to maintain quality control is precisely the type of conduct that

courts have found to be a material difference. *See e.g., Montblanc,* 172 F.Supp.2d at 239-240

(finding material difference based on removal of serial numbers, which interfered with trademark

owner's ability to perform a recall); *El Greco,* 806 F.2d at 395-396 (finding material difference

where trademark holder was unable to inspect and certify quality of shoes); *Bel Canto Design,*

*Ltd. v. MSS Hifi, Inc.*, 837 F.Supp.2d 208, 229-230 (S.D.N.Y. 2011) (finding material differences

based on unavailability of warranty and altered serial numbers); *Zino*, 571 F.3d at 244-246

(finding material difference where UPC codes were removed); *Philip Morris, Inc. v. Allen*

*Distributors, Inc.*, 48 F. Supp. 2d 844, 853 (S.D. Ind. 1999) (granting a preliminary injunction on

the sale of gray market Marlboro cigarettes because "foreign Marlboros (1) do not include "Miles", and (2) are not subject to the Plaintiff's quality control program.").

Monahan's inability to maintain control over the quality of Sam's Club's goods taken out of its supply network is a material difference that customers would find relevant in a purchasing decision. Sam's Club has put forth no evidence that seeks to rebut the presumption of consumer confusion stemming from its substantial variance in quality control. *Societe*, 982 F.2d at 643. Indeed, lack of quality control by Sam's Club left customers confused and frustrated when they received an older model stroller with different features than the model advertised. *See Amended Complaint*, Ex. 3, at 2. Sam's Club's employees were not trained on UPPAbaby products, it provides no service options for customers, and its strollers endured additional steps their packaging was not intended to endure. *Olivero Depo. Tr.*, at 75:19-25. Indeed, it is precisely Sam's Club's inability to abide by Monahan's quality control measures that prompted Monahan to refuse to sell to Sam's Club in the first place. *Apotheloz Depo. Tr.*, at 131:18-23 (Q: ███████

████████████████████████████████████████████████████████

████████████████████).

Monahan's inability to maintain quality control over Sam's Club's products constitutes a material difference. Accordingly, Monahan is entitled to summary judgment of trademark infringement.

## C. Sam's Club Does Not Dispute That Differences in Service and Support Monahan Provides to Customers of Authorized Retailers are Material Differences

The availability of Monahan's high-quality customer service and support is a material difference that supports awarding summary judgment to Monahan. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (agreeing with *Societe* and *SKF* that service commitments can be material differences).

Monahan expends significant resources to train its authorized retailers so that they are knowledgeable about Monahan's products, can make product recommendations to consumers based on their needs, can guide customers on assembly, and also help authorized retail store owners on how to display Monahan strollers. *Apotheloz Depo. Tr.*, at 9:6-12:19. Monahan sells to specialty-type stores, including boutiques or higher-end department stores with specific baby sections. *Id.* Monahan maintains a minimum pricing policy to ensure that retailers make a profit but also are able to service their customers after purchase. *Id.* at 31:5-19. And Monahan maintains a customer service team to provide guidance to customers on maintaining their strollers or making repairs, and, if a stroller is under warranty, can provide replacement parts or stroller. *Id.* at 69:11-72.

Even Sam's Club acknowledges that differences in service and support can be material differences that support a finding of trademark infringement. *See Def.'s Opposition*, at 14 ("[T]here were significant differences between the authorized and gray goods in addition to the warranty[, including that] the gray market good seller did not employ any customer service staff to answer questions, where as [the trademark owner] did."). And, there is no dispute that Sam's Club's employees lacked sufficient knowledge about Monahan products to provide the same level of customer service generally expected from retailers authorized to sell UPPAbaby products. Indeed, Sam's Club's employees had to call Monahan's customer service department to obtain answers to customer questions. *Def.'s Resp.*, ¶ 51.

Monahan's Warranty, quality control measures, retailer training, and knowledgeable customer service and support are factors that work together to make UPPAbaby strollers worthy of recognition for accessible luxury. Monahan had declined to do business with Sam's Club specifically because it feared that Sam's Club lacked the level of knowledge and service

available at authorized retailers. *Monahan Depo. Tr.*, 43:10-44:17. That can affect both the end user experience, and also Monahan's relationship with the authorized retailers that Monahan sells through and relies on to help maintain Monahan's brand reputation and goodwill. *Id.*

Because there is no dispute that significant material differences exist between authorized UPPAbaby strollers, and those sold by Sam's Club on the gray market, including undisputed differences in service and support, Monahan's *Motion for Summary Judgment* should be granted.

### D. Sam's Club's Arguments Regarding New York Law and Monahan's Warranty Applicability are Irrelevant

Sam's Club's arguments regarding New York law are irrelevant and an improper attempt to manufacture factual disputes. *See Chartier v. Brabender Technologie, Inc.*, 2011 WL 4732940, at *7 (D. Mass. 2011) (Saylor, J.) ("parties ought not be permitted to manufacture disputes of material fact to defeat summary judgment."). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact." *Horta*, 4 F.3d at 8.

There is no material dispute that Monahan's warranty does not apply to Sam's Club's strollers. *See Def.'s Resp.*, at ¶¶ 13-18, 29, 53. Monahan's warranty is applicable to goods purchased from an authorized retailer, and in the country in which the goods were intended to be sold. *Amended Complaint*, Ex. 2; *Def.'s Resp.*, at ¶17. Sam's Club has admitted that it is not an authorized retailer of Monahan's strollers. *Def.'s Opposition*, at 1; *Def.'s Resp.*, at ¶ 29. Its own supplier, ███, told Sam's Club several times that Monahan's warranty did not apply to its products. *Def.'s Resp.*, at ¶ 53. And Sam's Club's strollers were intended for sale overseas, and therefore not covered under Monahan's United States warranty. *See supra* Part I. Monahan's

choice to provide service for 2 of Sam's Club's ███ purchasers, at Monahan's own expense, does not render the Monahan warranty now applicable to Sam's Club's strollers.

Sam's Club's arguments about New York law are inapposite. Monahan's claims arise under federal law and Massachusetts state law. *See generally Amended Complaint*. Sam's Club fails to provide any factual support for the relevance of New York law. Sam's Club neither produced nor cited to any evidence that its strollers were sold to customers in New York, that a customer in New York sought to register for Monahan's warranty, or that Monahan denied New York customers the ability to register for its warranty. *See Def.'s Opp.*, at 11. Sam's Club has failed to produce any information about the specific location of any of its customers that purchased UPPAbaby strollers. And Sam's Club's two-sentence analysis is devoid of any factual support for its representation that "Monahan operates its sole 'hub' for UPPAbaby stroller maintenance and warranty claim service" in New York. This statement is literally false as Monahan primarily serves its customers from its Massachusetts headquarters. *See Amended Complaint*, at 1.

Sam's Club's arguments regarding New York law are irrelevant and fail to dispute any material fact in favor of summary judgment.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, Monahan respectfully requests that the Court find, as a matter of law, that Sam's Club is liable for trademark infringement.

Dated: January 13, 2020                    Respectfully submitted,

By:   /s/ *Nathan T. Harris*
          Craig R. Smith (BBO No. 636,723)
          Nathan T. Harris (BBO No. 675,533)
          Peter J. Evangelatos (*Pro Hac Vice*)
          **LANDO & ANASTASI, LLP**
          Riverfront Office Park
          One Main Street – 11th Floor
          Cambridge, MA 02142
          Tel:   (617) 395-7000
          Fax:   (617)-395-7070
          Email:   csmith@lalaw.com
                      nharris@lalaw.com
                      pevangelatos@lalaw.com

          ***Attorneys for Plaintiff Monahan Products LLC
          d/b/a UPPAbaby***

## CERTIFICATE OF SERVICE

I certify that on January 13, 2020, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which automatically sends email notification of such filing

to registered participants.  Any other counsel of record will receive the foregoing via e-mail in

PDF format.

/s/ *Peter J. Evangelatos*
Peter J. Evangelatos